Lee SALSBERY, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 7267.

District of Columbia Court of Appeals.

Argued Oct. 24, 1973.

Decided April 30, 1974.

Norman M. Glasgow, with whom Whayne S. Quin and John F. McCabe, Jr., Washington D. C., were on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This petition seeks review of an order by the District of Columbia Board of Zoning Adjustment (the Board) denying petitioner's application for a zoning variance. Petitioner sought a variance from a C–1 (neighborhood shopping) nonconforming use to a C–2 (community business center) use. Petitioner challenges the Board's denial claiming the order to be arbitrary, capricious, contrary to the evidence, .and without rational basis. He further alleges that the Board's findings of fact and opin-

ion failed to comply with the District of Columbia Administrative Procedure Act. We reverse and remand for further proceedings.

The property consists of real estate and a vacant building originally constructed in 1943 and leased to Safeway Stores, Inc., for use as a grocery store. At the time of construction, and continuing until 1958, the use was consistent with applicable zoning regulations. In 1958, a comprehensive zoning. plan was approved and the area surrounding the building was zoned as an R–4 District (row dwellings and conversions). The building and property were classified as C–1 nonconforming use.

In 1969, the lease was terminated and the building vacated. Since that time the previous owner has made repeated attempts to procure either a tenant or purchaser with a business consistent with the C–1 classification. In early 1972, a prospective tenant with a C–1 business was found and an application was filed with the Department of Economic Development to register the new operator and nonconforming use.[1] No certificate was issued because Zoning Board approval was required inasmuch as the anticipated use was not for a grocery store.[2] Board approval was sought, but before the hearing was conducted, the prospective tenant procured other arrangements. By the scheduled hearing date, a new prospective tenant had been found. He is the present petitioner. However, his proposed use of the building as a studio required a variance since that use was classified as C–2. A request to amend the original application for approval was granted to reflect the desired variance. The hearing was postponed to allow necessary public notice of change since, as observed, the change was from C–1 to C–2 nonconforming use.

At the hearing, letters from the majority of area residents in support of the recommended change were entered into the

1. Zoning Regulations of the District of Columbia, Art. 71, §§ 7102.1, 7110.4, 7110.5.

2. Zoning Regulations of the District of Columbia, Art. 71, §§ 7103, 7104.

record. Several experts testified including the real estate broker who, since September 1969, had unsuccessfully attempted to locate an occupant for the building. A builder testified that the structure could not feasibly be remodeled into conforming residential property. Specifically, the expense of conforming to height, heating, electrical, and plumbing requirements for such a building was prohibitive. Petitioner testified concerning the nature of his business, his expected impact on the neighborhood, and his proposed plan to build a residential facade on the existing structure. The Board denied the variance by an order containing "Findings of Fact" and an "Opinion", both of which we hold to be deficient.

The statutory provision in question is contained in D.C.Code 1973, § 5–420(3), and in Zoning Regulations of the District of Columbia, Art. 82, § 8207.11 (1958, as amended). Section 5–420(3) reads as follows:

> Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

This statute incorporates three requirements before the requested variance may be granted. Our decision in Palmer v.

Board of Zoning Adjustment, D.C.App., 287 A.2d 535 (1972), clarified two factual criteria, namely, a showing of "exceptional and undue hardship upon the owner", and "extraordinary or exceptional situation or condition" peculiar to the property in question and not to the general condition in the neighborhood. A third criterion, assuming both of the other two are established to the Board's satisfaction, was not before this court in *Palmer*. That standard relates to an exercise of the Board's judgment on the questions of (1) substantial detriment to the public good, and (2) impairment of the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

■■■ As we recognized in Taylor v. District of Columbia Board of Zoning Adjustment, D.C.App., 308 A.2d 230 (1973), it is the Board's responsibility to interpret the zoning regulations adopted by the Zoning Commission and our scope of review is limited to whether the Board's interpretation is legally consistent with the regulations and whether the decision is clearly arbitrary and capricious in both a factual and a legal context. *See also* Brawner Building, Inc. v. Shehyn, 143 U.S.App.D.C. 125, 442 F.2d 847 (1971); Hyman v. Coe, 146 F.Supp. 24 (D.D.C.1956).

■■■ Further, to assist this court in reviewing administrative action, we stated in Dietrich v. District of Columbia Board of Zoning Adjustment, D.C.App., 293 A.2d 470 (1972):

> The court can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision. There must be a demonstration of a "rational connection between the facts found and the choice made." . . . Generalized, conclusory, or incomplete findings are not sufficient. The findings must support the end result in a discernible manner, and the result reached must be supported by subsidiary findings of basic facts on all material issues. In

short, as we have said before, there must be findings on each material fact with full reasons given to support each finding. . . . [*Id.* at 473; citations omitted.]

Thus, in response to court directives, the Board's findings of fact and opinion should have contained, *inter alia,* expressed conclusions relating to "extraordinary and exceptional situation or condition of [the] specific piece of property" and to "peculiar and exceptional practical difficulties", or to "exceptional and undue hardship", and, if necessary, "detriment" to the public good and "impair[ment]" of the zoning objectives. Also, the underlying findings of fact should provide the rational bases for such articulated conclusions. Upon the record before us, we deem the Board's "findings of fact" deficient. Its opinion is so replete with mere conclusions and summaries of petitioner's position that we are unable to determine whether the Board's "findings" are supported by the evidence. Consequently, we cannot discern the necessary rational basis for its ultimate decision.

The Board ordered "[t]hat the application for permission to *change a non-conforming use* from a retail grocery to a gallery and artist studio . . . be DENIED." (Emphasis supplied.) This order reveals an error evident in material parts of the record, *viz,* that the Board misperceived what the petitioner was seeking (a variance). Moreover, the Board treated what the intended use by the first prospective tenant was to have been. Such a use by that tenant would still have been within a C–1 classification and therefore would not have involved a variance,[3] whereas petitioner intended the building to be used as a photographic studio which would have required a variance to C–2 use.[4]

Finding of Fact No. 1 states that the property "is located in a C–1 District". In point of fact, however, it is located in an R–4 District and is classified as a C–1 nonconforming use. Findings of Fact Nos. 3, 4, and 5 are not findings at all but instead are summaries of petitioner's argument and are recognized as such by the Board, *e. g.,* each of those findings begins with, "It is applicant's contention . . . ."[5] Finding of Fact No. 5 also suffers from a misperception of the issue before the Board for there the Board said:

It is the applicant's contention that the case herein is for a variance for the Board to permit change of a retail grocery store to a C–1 nonconforming use, i. e., photographic studio.

As already noted, though the Board was correct that petitioner sought a variance, the variance was from C–1 (grocery store) use to a C–2 (photographic studio) use.

In Finding of Fact No. 6, the Board paraphrases testimony as to the planned appearance of the facade. It then concludes that the structure will be "a quiet dignified type of use completely in harmony with neighboring uses".

■ The Board states in Finding of Fact No. 7 that it must find that the cost of conversion of the building to residential use would be excessive and not justified when compared to the income that may be derived. No finding on this point is made either way. Consideration of this aspect of the case, though important, does not obviate the necessity for the findings required by the statute.

. The Board's opinion suffers from similar defects. At one point the opinion refers to change in nonconforming use and

---

3. *See* note 2, *supra.*

4. Article 71 of the Zoning Regulations does not authorize the Board to change a C–1 nonconforming use to a C–2 classification; therefore, petitioner resorted to a variance as authorized in D.C.Code 1973, § 5–420(3), and

Article 82, § 8207.11 of the Zoning Regulations.

5. Findings of Fact Nos. 2 and 8 consisted of uncontested historical background and record facts.

at others it recognizes the request to be for a variance. Further, with reference to the showing of "undue hardship", the Board states, "A great burden of proof is required of the applicant and it is our determination that applicant has not carried his burden." There is no articulated basis for such conclusion. The Board has not delineated the factors weighed in reaching the conclusion nor the possible deficiencies in petitioner's presentation.

Additionally, the Board purported to exercise a judgment by way of concluding that it "do[es] not agree that the substitution of a photographic studio for a retail grocery store will not be more detrimental to the neighborhood than the prior use." It is impossible to know upon what factors or considerations the Board based this conclusion. Moreover, neighborhood detriment, as such, is not a criterion under § 5–420, *supra*.

The final conclusion of the Board is that the intended "use will have an adverse effect upon the present character and future development of the neighborhood and will substantially impair the purpose, intent or integrity of the Zoning Regulations and Maps." Two observations as to this conclusion are warranted. First, the statutory order of consideration would seem to preclude a decision on the proviso criterion absent a finding in favor of the applicant on hardship or exceptional practical difficulties resulting from extraordinary or exceptional situation of the property. This is particularly important in cases of a contested application where it may be said that opponents to a variance can first contest these issues without addressing the proviso. Since the Board, without the required specificity, ruled against petitioner on his hardship claim, it should not have reached consideration of the proviso. *Cf.*

Palmer v. Board of Zoning Adjustment, *supra* 287 A.2d at 539 n. 9. Second, and in any event, the conclusion is so lacking in articulated factual basis that to sustain it on this record would require impermissible resort to inferences. Brewington v. District of Columbia Board of Appeals and Review, D.C.App., 287 A.2d 532 (1972).

We note in passing that the brief of the Corporation Counsel on behalf of the Board did not address itself to the adequacy of the Board's decisional document though the issue was prominently raised by petitioner. This may have been because it was recognized that the point had decisive merit. Hopefully, the office of the Corporation Counsel will find it possible to exert strong influence at the administrative level to correct such shortcomings.

Petitioner, understandably exasperated at the resultant loss of time and income, argues against remand and seeks a declaration from this court granting the variance. In line with this opinion, such action would not comport with our scope of review. Not being able to effectively review the Board's conclusion, we are unable to declare the result reasonable or unreasonable. *See* SEC v. Chenery Corp., 318 U.S. 80, 93–94, 63 S.Ct. 454, 87 L.Ed. 626 (1942). The proper disposition in this case must be remand. Such remand is not solely for the purpose of redrafting findings and conclusions to facilitate our review and reinforce the Board's decision. The Board may deem it desirable, in applying the statutory criteria referred to above, to conduct further hearings or to even reach a different result.

Due to the disposition of petitioner's second allegation, we do not address ourselves to his first contention.

Reversed and remanded.