Edward A. SHAY et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

Nicholas A. Addams et al., Intervenors.

No. 8231.

District of Columbia Court of Appeals.

Argued Jan. 23, 1975.

Decided March 19, 1975.

Rehearing and Rehearing en Banc
Denied June 10, 1975.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow, John F. McCabe, Jr., Washington, D. C., and Glenn D. Simpson, Rockville, Md., were on the brief, for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Nicholas A. Addams, Washington, D. C., with whom George Peter Lamb and Harry H. Voight, Washington, D. C., were on the brief, for intervenors.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

The District of Columbia Board of Zoning Adjustment (the Board) denied after a hearing, an application for a special exception [1] to permit, in a Special Purpose (SP) District,[2] the construction and use of an office building.[3] The property involved,

---

1. D.C.Code 1973, § 5–420. *See also* Zoning Regulations, § 8207.2.

2. Section 4101.1 provides:
   The Special Purpose District is designed to stabilize those areas adjacent to the C–4 District which contain office, other Central Business District supporting uses, as well as desirable sites for residential *buildings*. Offices, *apartment houses, hotels,* and controlled parking facilities are to be en-

couraged therein and the *district* will be generally restricted to the periphery of the C–4 District. (Emphasis in original.)

3. By Zoning Regulations, § 4101.42, the Board is authorized to permit in an SP District the construction of a new office building provided that:
   (a) The use is in harmony with existing uses on neighboring or adjacent property;

is in the 1700 block of N Street, N.W., and petitioners are its fee and contract owners. Intervenors are residents or business tenants of property in the immediate area, opposed to the construction and use of the proposed office building.

Petitioning for review the applicants (petitioners) contend principally that (1) the Board both in the conduct of the proceedings and in the dispositional process, failed to comply with controlling provisions of the District of Columbia Administrative Procedure Act (DCAPA), D.C. Code 1973, § 1–1509(b), (e); and (2) based its decision upon a misapprehension as to the requirements of Zoning Regulations, § 4101.42. We find these contentions meritorious.

Pursuant to Zoning Regulations, § 8203.-4, the Board conducted, on November 14, 1973, a public hearing [4] at which there was testimony in support of the application by a traffic expert, the architect of the proposed building, a real estate management specialist, and a representative of the District of Columbia Department of Highways and Traffic. The substance of this testimony was that the use of the proposed office building would be in harmony with existing uses on neighboring or adjacent property; that twenty-nine off-street parking spaces would be provided in the building and that its use would " . . . not create dangerous or other objectionable traffic conditions."

The testimony of witnesses for the intervenors was in summary that intolerable traffic conditions obtained in the 1700 block of N Street, N.W., and that because two-hour metered parking is permitted on both sides of the street during rush hours, traffic routinely backs up from 17th Street. There was also testimony that on occasions in the past "fire trucks, ambulances, police and other emergency vehicles were unable to proceed on an emergency basis." In addition, there was other opposition testimony and exhibits purporting to establish the existence of controlling architectural, aesthetic and historical considerations.

From this evidence, some relevant and some wholly irrelevant, the Board made nine findings of fact and several conclusions of law upon which was based the order denying the application. We proceed, therefore, to an examination of the Board's findings of fact and conclusions of law. The difficulty we encounter at the outset is that what purport to be findings of fact are little more than recitals of undisputed facts of record and very brief references to the testimony in support of and in opposition to the application. For example, in Findings of Fact Nos. 1, 2, 3 and 4, it is said that petitioners propose to construct on land in the 1700 block of N Street, N.W., a 48-unit office building to replace a 48-unit hotel; [5] that other improvements on land in the block were row dwellings used for residential and commercial purposes, an apartment house, two office buildings and a commercial parking lot; and that parking is permitted on both sides of the 32-foot roadway which accommodates one-way traffic moving in an easterly direction. In Finding No. 5, it is said that opposition voiced at the public hearing was based upon the increase of traffic and " . . . alleged destruction of this old section of downtown Washington." Findings Nos. 6 and 7 summarized the tes-

---

(b) The use will not create dangerous or other objectionable traffic conditions;

\* \* \* \* \*

(d) Before taking final action on an application for such use the Board shall submit the application to the Director, Department of Vehicles and Traffic for review and report.

4. As required by Zoning Regulations, § 4101.-42(d), the Board referred the application to the Director, Department of Vehicles and Traffic, who, after review, reported no objection to the approval of the application. This Department has been redesignated Department of Highways and Traffic.

5. Strangely enough the Board, while finding that the hotel provided no off-street parking, made no reference to the 29 off-street parking spaces provided for in the plans for the proposed office building.

timony of Mr. Burton Sexton, an expert witness for the petitioners, to the effect that the traffic volume in the 1700 block of N Street is minor and that during rush hours traffic on 17th Street, into which N Street traffic flows, is heavy. By Finding No. 8, the Board traced the movement of traffic in the 1700 block of N Street, eastward from 18th Street and Connecticut Avenue. Finding No. 9 reads:

> The Board finds that the use of the proposed office building which may be used by doctors, dentists, architects, engineers, lawyers, and chanceries, would substantially increase traffic in the 1700 block of N Street, N.W.

The Board then concluded as a matter of law that based upon the findings of fact the application for a special exception would be denied saying: "In deciding the application the Board must make findings on whether or not the proposed use is in harmony with existing uses in the neighborhood [6] and whether or not, the use will create any dangerous or other objectionable traffic conditions." What purports to be a further conclusion of law reads:

> The Board reasons, that because of the narrow width of N Street in the 1700 block, because of the existing commercial uses in the block, and the parking lot at [the] corner of 18th and N Street, N. W., and because of objections registered at the public hearing by the opposition, that the proposed use, if allowed, would substantially increase the amount of traffic in the neighborhood thereby creating an objectionable traffic condition.

The DCAPA, D.C.Code 1973, § 1–1509, mandates that:

> (e) Every decision and order adverse to a party to the case, rendered by . . . an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law. *The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative and substantial evidence.* A copy of the decision and order and accompanying findings and conclusions shall be given by the Commissioner or Council or the agency, as the case may be, to each party or to his attorney of record. (Emphasis added.)

■ Notwithstanding the clarity with which this statutory responsibility is spelled out, we have found it necessary most recently in Salsbery v. District of Columbia Bd. of Zoning Adj., D.C.App., 318 A.2d 894 (1974), to admonish the Board that administrative determinations must be based on findings of fact which articulate with reasonable certainty the reasons for the disposition of each contested issue of fact. As we sought to make clear in Deitrich v. District of Columbia Bd. of Zoning Adjust., D.C.App., 293 A.2d 470, 473 (1972):

> Generalized, conclusory, or incomplete findings are not sufficient. The findings must support the end result in a discernible manner, and the result reached must be supported by subsidiary findings of basic facts on all material issues. In short, as we have said before, there must be findings on each material fact with full reasons given to support each finding. (Citations omitted.)

*See also* Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535, 538 (1972); Robey v. Schwab, 113 U.S.App.D. C. 241, 307 F.2d 198 (1962); 2 K. Davis, Administrative Law § 16.05 at 444 (1958).

At the hearing on petitioners' application, clear factual issues were raised as to (1) whether the proposed use was in harmony with existing uses in the neighbor-

---

6. The Board made no finding whatsoever as to whether the proposed use would or would not be in harmony with existing uses in the neighborhood.

hood, and (2) as to whether the proposed use would " . . . create dangerous or other objectionable traffic conditions." The testimony of petitioners' expert witnesses and that of the representative of the District of Columbia Department of Highways and Traffic tended to establish the conditions precedent imposed by Zoning Regulations, § 4101.42. Petitioners' expert testimony was contradicted by the testimony and lay opinions of intervenors' witnesses [7] who resided or maintained offices in that block.[8] The objections voiced by intervenors' witnesses were based in part on architectural, aesthetic and historical considerations [9] and in part on existing rush hour traffic conditions.

From the foregoing it appears of a certainty that the Board in arriving at its decision must have accepted the testimony and lay opinions of intervenors' witnesses and rejected the expert testimony of petitioners' witnesses.[10]

■ But whatever view may be taken of the evidence it is almost too clear for discussion that the Board's findings of fact are devoid of any delineation of the factors weighed in reaching its conclusions of law. Since no reference is made to any deficiency in the petitioners' presentation, it is simply impossible to determine what factors or considerations influenced the Board to its decision.[11] As we said in Salsbery v. District of Columbia Bd. of Zoning Adj., the Board's

. . . conclusion[s] [are] so lacking in articulated factual basis that to sustain [them] on this record would require impermissible resort to inferences. (*Supra* 318 A.2d 898.)

*See also* Citizens Ass'n v. District of Columbia Alc. Bev. C. Bd., D.C.App., 316 A.2d 865, 867, aff'd, 323 A.2d 715 (1974), and Brewington v. District of Columbia Board of Appeals and Review, D.C.App., 287 A.2d 532 (1972).

Nevertheless, it is not the function of this court to substitute its judgment for that of the Board although there may be persuasive reasons to do so. *See* D.C. Code 1973, § 1–1510. Accordingly, we reserve at this time the decision on review and remand the record to the Board with directions to make promptly, from relevant evidence in the administrative record, findings of fact and conclusions of law consistent with the requirements of the DCAPA, and certify the same to this court in a supplemental record, furnishing copies thereof

---

7. While the testimony as to existing traffic conditions was contradictory, the only testimony that was addressed to the impact of the proposed use on traffic conditions in the area was that offered by petitioners' expert witnesses and the representative of the Department of Highways and Traffic.

8. One of the opposition witnesses was counsel for the intervenors and the court calls his attention to Canon 5 of the Code of Professional Responsibility (EC 5–9).

9. The Corporation Counsel, with commendable candor concedes that the Board in passing upon an application for a special exception under Zoning Regulations, § 4101.42, has no regulatory concern whatsoever with the historical character of the neighborhood.

10. While agencies are not always bound to accept expert testimony over lay testimony, *see* Marjorie Webster Jun. C., I. v. District of Col. B. of Z. A., D.C.App., 309 A.2d 314, 319 (1973), the opinions of qualified experts are not to be lightly disregarded and the probative value of lay opinions is often doubtful. *See, e. g.,* Goldstein v. Zoning Board of Review, City of Warwick, 101 R.I. 728, 227 A.2d 195 (R.I.1967). In any event, some indication in the findings as to the reasons for rejecting the expert testimony in favor of that of lay witnesses was certainly required if judicial review is to be meaningful.

11. For instance we are unable to determine from the Board's findings what consideration, if any, was given to what was continually referred to as the historical character of the neighborhood, nor are we able to determine what consideration, if any, was given to the testimony of intervenors' counsel, interspersed as it was with representations made to the Board as to the interpretation of the Zoning Act and Regulations, the testimony of petitioners' witnesses, the historical significance of the 1700 block of N Street, N.W., and the actions of the Board in other cases.

to counsel for the respective parties. In the event the Board reaches a decision favorable to petitioners, the case shall be deemed remanded for that purpose. The Clerk of this court shall be notified by the Board of such a decision.

So ordered.