**DUPONT CIRCLE CITIZENS ASSOCIATION, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**Nos. 12304, 12513.**

District of Columbia Court of Appeals.

Submitted June 27, 1978.

Decided Aug. 16, 1978.

Robert J. Pope, Washington, D. C., was on the brief for petitioner.

John R. Risher, Corp. Counsel, Washington, D. C., at the time the brief was filed, Richard W. Barton, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief for respondent.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

YEAGLEY, Associate Judge:

Appeal is taken from two orders of the Board of Zoning Adjustment (the Board) granting applications of Norair Realty Company (Norair) for special exceptions to operate parking lot facilities in the Dupont Circle area.[1] In appeal No. 12304 (application 12263) the Board, by order dated April 20, 1977, granted Norair permission to combine two lots, located at 1124 22nd Street and 1123 23rd Street respectively, with an already existing parking facility on which the subject lots abutted. This order will expire on October 19, 1978, coincidental with expiration of a prior Board order granting a special exception for the already existing facility. The Board denied a petition for reconsideration on June 10, 1977, and a petition compelling our review was thereafter filed in timely fashion.

In appeal No. 12513 (application 12397), the Board, by order dated August 17, 1977, granted for a two-year period Norair's petition for a special exception to continue operation of a parking facility at 1122–1124 23rd Street. A petition for review was again filed, and a motion to consolidate the cases was granted.

In its brief to this court, petitioner argues that in granting the special exceptions, the Board failed to give full and reasonable consideration to all material facts and issues before it, and lacked sufficient evidence on which to base its decisions.

Examination of the records in the instant appeals in light of relevant regulations and case law confirms the merit of petitioner's argument with respect to application 12263, but compels rejection of petitioner's argument with respect to application 12397. The Board's disposition of the former is reversed, the latter affirmed.

## I. SPECIAL EXCEPTIONS: APPLICABLE LAW

District of Columbia Zoning Regulation § 8207.2 empowers the Board to grant special exceptions

> where in the judgment of the Board such special exceptions will be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property in accordance with said zoning regulations and maps, subject

---

1. The subject neighborhood is an R–5–B residential zone, in which operation of parking lots is ordinarily prohibited.

in each case to the special conditions specified in said articles.

Section 8207.2 makes specific reference to the conditions specified in Zoning Regulation § 3104.44, which authorizes the Board to grant special exceptions for parking lots only on the following conditions:

(a) All provisions of Article 74 [2] are complied with;

(b) No commercial advertising signs shall be permitted outside any *building* located thereon, except one advertising the rates as required by the Police Regulations of the District of Columbia;

(c) No dangerous or otherwise objectionable traffic conditions shall result from the establishment of the use; the present character and future development of the neighborhood will not be affected adversely; and the *parking lot* is reasonably necessary and convenient to other uses in the vicinity; and,

(d) Before taking final action on an application for such use, the Board shall submit the application to the Director, Department of Transportation [3] for review and report.

 The Board's discretion in reviewing special exception applications is limited to determining whether the proposed exception satisfies the requirements of the regulation under which it is sought, and the burden of demonstrating this rests with the applicant. *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973). We have stressed that the Board's determination must be based on express factual findings which articulate with certainty and clarity the basis for the decision. *See, e. g., Shay v. District of Columbia Board of Zoning Adjustment*, D.C.App., 334 A.2d 175, 177 (1975); *Salsbery v. District of Columbia Board of Zoning Adjustment*, D.C.App., 318 A.2d 894, 896 (1974). Indeed, D.C.Code 1973, § 1–1509(e) provides:

Every decision and order adverse to a party to the case, rendered by the Commissioner or Council or an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence.

As we recognized in *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 293 A.2d 470 (1972):

There must be a demonstration of a rational connection between the facts found and the choice made [citations omitted]. Generalized, conclusory, or incomplete findings are not sufficient. . . . In short . . . there must be findings on each material fact with full reasons given to support each finding. [*Id.* at 473.]

With this in mind, we turn to the Board's disposition of the special exception applications which are the subject of these appeals.

## II. APPEAL NO. 12304 (APPLICATION 12263)

On August 11, 1976, Norair Realty Company applied for a special exception to combine two vacant lots, on 23rd and 22nd Streets, respectively, with an already existing off-street parking facility on which the lots abutted. A total of 23 new spaces would be added to the pre-existing 67 spaces. A public hearing was held before the Board on December 15, 1976, by which time the Board was in receipt of a Municipal Planning Office (MPO) report recommending that the exception be granted. The MPO report did not address the three prerequisites of § 3104.44(c) with which the Board must comply. No mention was made of the projected impact of the proposed

2. Section 74.04 of the zoning regulations sets out specifications for the design and maintenance of parking lots in the District of Columbia.

3. *See* D.C.Code 1977 Supp., 1 App.Reorg.Plan No. 2 of 1975.

facility on local traffic conditions. No assessment was offered concerning impact on the character and development of the neighborhood. No finding was made that the lot was reasonably necessary and convenient to other uses in the vicinity. The evidence adduced at the hearing before the Board on these points was limited. Norair produced no significant evidence with respect to the impact of the proposed exception on area traffic conditions. The only arguably relevant testimony in this regard addressed the capacity of the lots, and the means of access to and egress from the proposed facility.

■ Mr. Ralph Blevins, president of RBI Parking Corporation, and a witness for Norair, was asked if the lot was necessary to the neighborhood, and responded that about one-fourth of the new total of 90 spaces could be expected to go to residents of a nearby apartment building. Indeed, Mr. Blevins testified, the two subject lots were already paved and being used for parking, despite failure to procure a special exception and a certificate of occupancy.[4]

Ms. Sally Wayne, Norair's property manager, was asked about long range plans for the subject properties. She responded, without elaboration, that there were "long range plans for the development of the entire area, when adjacent properties are bought".

On April 20, 1977, the Board, by order, unanimously granted Norair's application. The record shows that the Board acted without having received a review and report from the D.C. Department of Transportation (DOT), as required by § 3104.-44(d). Indeed, the Board made no findings of fact on traffic impact, on the effect of the facility on the character of the subject

neighborhood, or on the need for a parking lot. The Board noted little more than that "[t]he lot is utilized by area residents, patrons of nearby commercial establishments and commuters."

The Board concluded

that the parking lot is reasonably convenient to the residential apartments and commercial facilities located in the immediate vicinity of the site . . . that the use has not resulted in any dangerous or objectionable traffic conditions . . [and] that the present character and future development of the neighborhood will not be adversely affected.

■■ We hold that the Board's findings and conclusion are neither adequate nor supported by substantial evidence, as required by D.C.Code 1973, § 1–1509(e). *See Shay, supra; Salsbery, supra; Dietrich, supra.* Review of the instant record illustrates that the Board failed to adequately consider the issues—traffic, impact on neighborhood character, and need—which it was required by statute to address. The paucity of testimony on the impact of the proposed facility on area traffic was compounded by the Board's failure to get a DOT analysis of this question in order to satisfy the requirement of § 3104.44(d). The only testimony adduced by the applicant even arguably relevant to impact on neighborhood character was one witness' statement that Norair had long range plans to develop the area. The applicant presented no real evidence of need for the proposed facility, save unprobative testimony that perhaps 25 percent of the spaces would be used by neighborhood residents. The MPO report added nothing to this scant record.

The Board is required to dispose of special exception applications mindful that the

---

4. Use of these properties for parking lots without approval ran afoul of zoning regulation § 8105.1, which provides:

[T]he owner or person in charge of or maintaining any *building* or land or any other person who erects, constructs, re-constructs, alters, converts, maintains, or uses any *building* or *structure* or part thereof or land in violation of these regulations shall upon conviction for such violation be punished by a

fine of not more than $100 per day for each and every day such violation shall continue. We note with strong disapproval that the Board failed to respond to this apparent violation of the zoning regulations. Favorable disposition of this application thus ratified an illegal act. The citizens of the District of Columbia are not well served when the Board proceeds in this manner.

burden is on the applicant to demonstrate that the proposed exception satisfies the requirements of the regulation under which it is sought. *Stewart, supra.* In the instant case, the applicant failed to make the requisite showing, and provided no basis for the Board's conclusion. Although this court is neither empowered nor disposed to substitute its judgment for that of the Board, we require "a rational connection between the facts found and the choice made." *Dietrich, supra* at 473. That is absent here. We accordingly reverse.

### III. APPEAL NO. 12513 (APPLICATION 12397)

█ On February 28, 1977, Norair applied for a special exception to renew its certificate of occupancy for a lot at 1122–24 23rd Street, N.W., which had been the subject of a prior special exception for use as an off-street parking facility for 14 commuter automobiles. A public hearing was held on May 24, 1977. By then, the Board had received a detailed MPO report recommending approval of the application. The report observed that a parking facility had been operated on the subject site for ten years, that the neighborhood, in a state of flux, was characterized by mixed uses, and that the parking facility was likely an interim use. The report noted that the lot "provides convenient parking to the offices and other uses in the vicinity and helps satisfy the parking needs of the area."

The Board had also received a report from DOT recommending that the petition be approved for a four-year period, subject to reevaluation "to determine the accessibility by transit of the facilities served by the parking lot." To explain its recommendation, DOT submitted a copy of its statement of policy regarding commuter parking lots, the nub of which was that such lots remained necessary while the metrorail system was in its infancy. DOT observed that traffic was heavy on 23rd Street, onto which the subject lot emptied.

The hearing was unfortunately of little utility. No evidence was presented with respect to traffic conditions and the charac-

ter of the neighborhood. Mr. Blevins again testified for Norair. Asked whether the lot was reasonably necessary and convenient to other uses in the vicinity, he replied only that the area contained a large apartment building and businesses.

On August 17, 1977, the Board published a unanimous order granting the subject application for two years. The Board made the following pertinent findings, based almost exclusively on the detailed MPO and DOT reports that had been submitted to it: (1) The lot has existed on the subject property for ten years and has been the subject of prior special exception grants (relevant to all regulatory prerequisites). (2) The lot is an interim use, but applicant has no immediate plans for developing the property (relevant to character of neighborhood). (3) The lot is abutted by row dwellings, in an area of mixed uses which includes another lot and a Police Department facility (relevant to character of neighborhood). (4) Vehicles enter the lot from a rear alley and exit onto 23rd Street (relevant to traffic impact). (5) Spaces are leased monthly by commuting employees of nearby businesses (relevant to need). The Board then concluded, based on the above findings and the record, that the application fulfilled the requirements of § 3104.44.

Although the applicant itself did almost nothing to demonstrate that its proposed exception satisfied the relevant regulations, and the hearing was little more than a formality, the record reveals adequate Board consideration of the subject application and includes facts, recited above, from which the Board could make a reasonable judgment that the application met the regulatory prerequisites. *See Stewart, supra.* The Board's findings, supported by substantial evidence, are clear and concise, and demonstrate a logical nexus between the facts relied upon and the conclusion reached. D.C.Code 1973, § 1–1509(e). *Shay, supra; Salsbery, supra; Dietrich, supra.* We thus uphold the Board's conclusion and resultant order.

*Affirmed* in No. 12513.

*Reversed and remanded* in No. 12304.