**FIRST BAPTIST CHURCH OF WASHINGTON, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Dupont Circle Citizens Association, et al., Intervenors.**

**No. 80–577.**

District of Columbia Court of Appeals.

Argued Dec. 9, 1980.

Decided May 18, 1981.

Norman M. Glasgow, Washington, D.C., with whom Carolyn J. Hamm, Washington, D.C., was on the briefs, for petitioner. James A. Stenger, Washington, D.C., also entered an appearance for petitioner.

David P. Sutton, Washington, D.C., and Philip T. Van Zile, III, Asst. Corporation Counsel, Grosse Pointe Farms, Mich., entered appearances on behalf of respondent and adopted intervenors' brief.

William J. Franklin, Washington, D.C., for intervenors.

Before KERN, HARRIS and PRYOR, Associate Judges.

PRYOR, Associate Judge:

This is a petition for review of an order of the District of Columbia Board of Zoning Adjustment (BZA or the Board) denying an application for special exception for the continued operation of a parking lot in a downtown residential neighborhood. Recognizing that our review of such cases focuses upon a determination of whether the Board's decision follows from its findings and whether the findings are supported by substantial evidence of record, *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973), *see* D.C.Code 1973, § 1–1510(3)(E), we conclude that the findings of fact and conclusions of law reached by the Board are deficient, and therefore, must be reversed.

## I

The subject property is owned by the petitioner, First Baptist Church of Washington, and is located at 1513–19 O Street, N.W. For at least fifteen years the property has been operated as a parking lot, via a special exception granted by the BZA. On weekdays, from 7:00 a. m. to 6:00 p. m., Parking Management, Inc., (PMI) operates a commercial parking business on the lot. On Wednesday evenings and Sundays, petitioner uses the lot for parking for its parishioners. In the evenings and on weekends, community residents use the lot free of charge.

The property is located in an area zoned R–5–B. R–5 districts are mixed use areas

> designed to permit flexibility of design by permitting in a single district ... all types of urban residential development.... [*District of Columbia Zoning Regulations*, § 3105.1 (May 1979).]

Parking lots are not permitted in R–5–B areas as a matter of right, but may be authorized, as a special exception, if the conditions specified in Zoning Regulation § 3104–44 *et seq.* are satisfied. Section 3104–44 *et seq.*, imposes the following conditions:

> § 3104.441. All provisions of Article 74 are complied with;
>
> § 3104.442. No commercial advertising signs shall be permitted outside any building located thereon, except one advertising the rates as required by the Police Regulations of the District of Columbia;
>
> § 3104.443. No dangerous or otherwise objectional traffic conditions shall result from establishment of the use; the present character and future development of the neighborhood will not be affected adversely; and the parking lot is reasonably necessary and convenient to other uses in the vicinity; and
>
> § 3104.444. Before taking final action on an application for such use, the Board shall submit the application to the District of Columbia Department of Transportation for review and report.

■ In reviewing applications for a special exception under § 3104.44, the Board's discretion is limited to determining whether the proposed exception satisfies the above requirements. The applicant has the burden of proving a need for the exception, that the safety and traffic requirements are met, and that there will not be an adverse effect upon the neighborhood. *Dupont Circle Citizens Association v. District of Columbia Board of Zoning Adjustment*, D.C.App., 390 A.2d 1009, 1011 (1978); *Stewart v. District of Columbia Board of Zoning Adjustment, supra* 305 A.2d at 518. The Board itself has the responsibility for obtaining a transportation report on the matter. *See* § 3104.444. If the applicant meets its burden, the Board ordinarily must grant the application. *Stewart, supra* 305 A.2d at 518.

In this regard we have consistently held that the Board's determination must meet the three-pronged "substantial evidence" test encompassed in D.C.Code 1973, § 1–1509(e). In *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission*, D.C.App., 402 A.2d 36, 41 (1979), we articulated the test thusly:

(1) there must be findings on "each contested issue of fact," § 1–1509(e); *see Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 472–73 (1972) (*Dietrich I*);

(2) the decision must rationally follow from the facts, . . .

(3) there must be sufficient evidence supporting each finding, *i. e.*, "more than a mere scintilla. . . ."

Guided by these principles we turn now to the Board's disposition which is the subject of this appeal.

## II

■ Petitioner filed an application with the BZA for a four-year extension of its special exception to continue using the subject property as a parking lot. On Novem-ber 28, 1979, a public hearing was held. Testimony in favor of the petition was adduced from the assistant vice president of PMI and a trustee of the First Baptist Church. In opposition, the Board heard from a representative of the Dupont Circle Citizens Association, who was also a member of the Advisory Neighborhood Council (ANC),[1] and an area resident. Additionally, a petition was accepted into evidence, signed by some area residents who supported the continued use of the lot for parking. We here review the testimony adduced at the hearing as it relates to critical questions of: building and safety requirements; traffic conditions, effect of the lot on the present character and future development of the neighborhood; necessity of [the parking lot] and convenience to other uses.

## BUILDING & SAFETY REQUIREMENTS

The PMI representative testified that the lot was in full compliance with Article 74 and § 3104.442. He introduced a plat showing that the lot was operated in compliance with pertinent zoning regulations. Two driveways, each 25 feet in width, provide adequate ingress and egress from the lot. Consistent with Article 74, the driveways enter onto 15th and O Streets, N.W., in excess of 25 feet from the intersections. A shed provided for the parking attendants is located in the center of the lot, thereby not obscuring visibility of motorists entering or exiting the lot. The lot is paved with a weather impervious surface and is illuminated by the required lighting. Neither PMI nor petitioner has received any complaints about the maintenance of the lot.

No opposition testimony was presented on the issue.

## TRAFFIC CONDITIONS

Proponents of the special exception testified that the lot relieves congestion on the nearby streets by providing a free and convenient parking area for residents in the

1. While the representative of the ANC purportedly testified on behalf of the ANC, that organization never submitted a written report as required. Accordingly, the BZA rightfully concluded that it could not receive testimony of the witness as an official statement of the ANC's views.

evenings and on weekends. Because the lot provides additional parking space for residents, overparking and double parking is reduced, thereby making the neighboring streets more safe for motorists and pedestrians.

An opponent conceded that she had not observed any traffic problems relative to the lot, but opposed it on aesthetic grounds.

. The Board did not procure a traffic report from the District of Columbia Department of Transportation (DOT). *See* § 3104.444.

EFFECT ON THE PRESENT CHARACTER AND FUTURE DEVELOPMENT OF THE NEIGHBORHOOD

In support of their position that the lot does not have an adverse impact on the neighborhood, proponents introduced into evidence, a petition signed by some neighborhood residents stating that they wholeheartedly supported the renewal of the permit which would allow continued use of the lot for commercial parking. Proponents proffered that the offstreet parking facility was a positive influence on the neighborhood since it reduced illegal· parking and attendant hazards. Additionally, proponents pointed to the absence of any complaints from neighbors or authorities as an indication that the lot did not adversely affect the neighborhood. Finally, the Board's fifteen-year renewal of the operation permit was cited as an indication that the Board had continuously found the lot not to be detrimental to surrounding land uses. Proponents noted that they sought to continue the lot under the same conditions as had previously been found acceptable to the Board.

In the main, opponents expressed the view that the lot was unsightly and that the land could better be utilized for housing. A resident observed that while trucks occasionally collect trash, she was frequently seen litter. It was testified that petitioner had, in the past, refused to sell the property and that there was a need for more housing which, in turn, would yield greater tax benefits to the city.

Without the benefit of any document or report, the ANC representative stated that approval of the lot would, according to DOT, be in conflict with air quality objectives. In a similar vein, it was her opinion that the lot served to attract prostitutes and drug users. In support of this view, she mentioned, without documentation, an alleged murder in another parking lot.

NECESSITY

A trustee from the First Baptist Church testified that the church uses the lot for parking for its parishioners on Wednesday evenings and Sundays. Ninety percent of the church congregation relies on private automobiles for transportation to church. Many of these parishioners come from outside of the District. Petitioner owns an additional parking facility adjacent to the church, but the church is in the immediate process of building an educational facility on that land, thereby abrogating its use for a parking lot.

There is a commercial parking lot across the street from the church which could provide alternative parking for the parishioners, for cost. However, the church desires to provide free parking for its congregation. The trustee testified further that the church cannot afford to build an underground parking lot.

The two witnesses in opposition opined that public transportation in the area was adequate and that sufficient parking was available.

### III

On the above evidence, the Board made twelve findings which are unsupported by reliable, probative, and substantial evidence on the record. *See Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282, 285 (1974) (*Dietrich II*). Similarly, the Board reached conclusions of law which are unsupported by the evidence of record, and do not flow rationally therefrom. *See The Washington Ethical Society v. District of Columbia Board of Zoning Adjustment,* D.C.App., 421 A.2d 14, 18 (1980). We here only address the challenged findings and conclusions, for

we stated in *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission, supra* 402 A.2d at 43 n.10, that we will assume the validity of findings and conclusions which petitioner does not challenge.

■ In Finding No. 7, the Board determined that "[t]he applicant owns other lots in the immediate area which are used or are contemplated as being used for commercial parking lots." The evidence of record reflects, contrary to this finding, that the church solely owns one other parking lot— land located adjacent to the church now being used for parking—that will soon be the site of a new church-owned educational facility. The evidence established that once the facility is complete, this lot will no longer be available for parking. Thus, we conclude, as petitioner urges, that Finding No. 7 is not founded on the evidence, and as a matter of law, must be deemed arbitrary and capricious. *See* D.C.Code 1973, § 1–1510(3).

■ In finding No. 9, the BZA stated that it referred the petitioner's application to the DOT for review and a report pursuant to § 3104.44, but that the Department failed to submit a report. Such a report is critical in a case of this nature where a number of pivotal issues relative to the renewal of the permit are within the purview of the DOT. Without it, especially on a record devoid of reliable information about traffic problems caused by the lot, and alternative modes of public transportation, it is difficult for the Board to reach an informed and balanced decision. Of course, the absence of the report hinders, in a similar fashion, review by this court. We therefore conclude that Finding No. 9 is insufficient to meet the statutory mandate.

■ Finding Nos. 10 and 11 are merely summaries of the testimony presented by the opponents. We point out, as we did in *Dietrich I, supra* 293 A.2d at 473, n.4, and *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission, supra* 402 A.2d at 42, that this is insufficient and cannot serve as a substitute for

"making definite findings of all the relevant basic facts...." *Dietrich I, supra,* 293 A.2d at 473, n.4. *See Shay v. District of Columbia Board of Zoning Adjustment,* D.C.App., 334 A.2d 175, 176 (1975); *Salsbery v. District of Columbia Board of Zoning Adjustment,* D.C.App., 318 A.2d 894 (1974).

■ Just as the findings cannot be based on generalizations or summarized testimony, the Board's conclusions must be based on sufficient evidence to convince reasonable minds of their adequacy, *Washington Ethical Society v. District of Columbia Board of Zoning Adjustment, supra* 421 A.2d at 18; *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission, supra* 402 A.2d at 42, and must rationally flow from its findings. The conclusions in this case fail to meet this standard. The Board concluded that

> the appellant offered no evidence that no dangerous or otherwise objectionable traffic conditions shall result from the continued use of the parking lot and that the present character and future development of the neighborhood will not be affected adversely as required under Subparagraph 3104.443 of the Zoning Regulations. The provisions of Paragraph 3104.-44 have not been met. As to a further requirement that the parking lot is reasonably necessary and convenient to other uses in the vicinity ... [t]he Board notes that there are many commercial parking lots in the subject area. The Board further notes that the subject area is well served by public transportation....

■ Our discussion in section II, *supra,* of this opinion reveals the erroneous nature of these conclusions. Though admittedly scant, the applicant offered evidence with regard to each prerequisite enumerated in § 3104.44. As noted, *supra,* the absence of substantial reliable traffic information was in large measure due to the failure of the Board to procure the DOT report. With regard to the evidence of adverse impact on the present character and future development of the neighbor-

hood, the petitioner offered, *inter alia*, its fifteen-year history of operation under a special exception. While we do not find that the petitioner's past history of operation under a special exception mandates continuance, we do concur with the *Spencer*[2] court, which stated that before the Board can decline to reissue an exception permit, the opponents should introduce evidence of "(1) a change of conditions ... and (2) other considerations materially affecting the merits of the subject matter ...."[3] In this case, we find the failure of respondents to introduce evidence to this effect, to have precluded the Board from reaching a decision adverse to the petitioner, in light of the evidence petitioner introduced on this point.

As this court has found that both the Findings and Conclusions of the Board are deficient, we must reverse and remand for a new hearing. On remand, we remind the Board of its role when reviewing special exceptions, as articulated by this court in *Stewart v. District of Columbia Board of Zoning Adjustment, supra* 305 A.2d at 518:

> Special exceptions, unlike variances, are expressly provided for in the Zoning Regulations. The Board's discretion to grant special exceptions is limited to a determination whether the exception sought meets the requirements of the regulation. The burden of showing that the proposal meets the prerequisite enumerated in the particular regulation pursuant to which the exception is sought rests with the applicant. In sum, the applicant must make the requisite showing, and once he has, the Board ordinarily must grant his application.

*Reversed and remanded.*

---

2. *Spencer v. Board of Zoning Appeals*, 141 Conn. 155, 104 A.2d 373 (1954).

3. *Id.* at 157, 104 A.2d at 375.