CITIZENS ASSOCIATION OF GEORGE-
TOWN et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,

President and Directors of Georgetown
College, Intervenors.

Nos. 8698, 8978.

District of Columbia Court of Appeals.

Argued Nov. 13, 1975.

Decided Oct. 21, 1976.

John D. Taurman, Washington, D. C., for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin and John F. McCabe, Jr., Washington, D. C., were on the brief, for intervenors.

Before KELLY and KERN, Associate Judges, and TAYLOR, Associate Judge, Superior Court of the District of Columbia.*

KERN, Associate Judge:

This is a petition for review of a determination by the Board of Zoning Adjustment (Board), the Chairman and one member dissenting, that intervenor Georgetown University should be granted a special exception permitting university uses in a district, *i. e.,* Georgetown, previously zoned

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

residential. The Board's order granting the special exception was issued July 11, 1974, and the Board then issued a modification of the order on October 21, 1974.

■ Preliminarily, there is an issue whether the proceeding before the Board constituted an application for a special exception or was merely an effort by intervenor Georgetown University to obtain the Board's approval of its campus master plan. The University has taken the position that the application sought only approval of its master plan and that its application for special exception status would come later. D.C. Zoning Regs. § 3101.-46(c) provides that the "applicant shall submit to the Board a plan for developing the campus as a whole . . . ." and is merely *one* of four steps necessary to obtain a special exception for university uses in an otherwise residential district. (No specific statute or regulation provides for the approval of a master plan as such.) Much of the evidence adduced in connection with the University's application pertained to the other three elements required for a special exception: (1) a showing that the proposed university use "is not likely to become objectionable to neighboring property because of noise, traffic, number of students or other objectionable conditions," *id.* § 3101.46(a); (2) a showing that the proposed use will not result in excessive density or "unreasonable campus expansion," *id.* § 3101.46(b); and (3) a submission of the application for such use to the National Capital Planning Commission and the Director of the Department of Highways and Traffic for review and report, *id.* § 3101.46(e).

Additionally, the findings of fact and conclusions of law embodied in the Board's order make reference to these other elements. The application states that it is for an appeal for a "variance, special exception or administrative ruling as provided in § 3103.41 (*sic* 3101.46)." The proposed use of the property is stated to be as follows: "Applicant seeks approval of its University Campus Development Plan entitled "Long Range Development Plan (Master Plan)." We conclude that the application is an appeal for all special exceptions necessary to permit the uses enumerated in the Master Plan submitted under § 3101.46(c), to the extent that evidence was introduced before the Board in support of special exceptions.

■ Petitioners are the Citizens Association of Georgetown, Inc., and two organizations owning property within the area of the special exception, the Foundation for the Preservation of Historic Georgetown and the Georgetown Corporation. Petitioners have raised a number of objections on appeal,[1] but we will focus on only two: (1) that the Board's findings of fact were inadequate and not supported by the evidence in the record, and (2) the Board's October modification of its July order was without proper notice and hearing in violation of the District of Columbia Administrative Procedure Act.

■ Special exceptions are expressly provided for in the District of Columbia Zoning Regulations, and in considering applications for special exceptions the Board must exercise its discretion consistently with the directives and guidelines found in the regulations. *Rose Lees Hardy Home*

---

1. We see no merit in petitioners' arguments that the Board's action was invalid because one Board member had contact ex parte with the University in his capacity as an adviser to the National Capital Planning Commission (NCPC). The Board member's service to NCPC was authorized by statute and necessarily required contact with University officials in the presentation of plans to NCPC. In view of our decision to remand on other grounds to the Board for further consideration, we do not reach the contentions (1)

that the Board did not conclude that the inclusion of property east of 37th Street within the University's requested boundary was not "unreasonable campus expansion" under § 3101.46(b) or issue findings that could support such a conclusion; and (2) that, with respect to non-University-owned land included within the proposed campus boundary, the University has no standing to seek, and the Board has no power to grant, a special exception.

& *School Association v. District of Columbia Board of Zoning Adjustment,* D.C. App., 324 A.2d 701, 706 (1974). The burden of showing that the proposed use meets the requirements for a special exception is upon the applicant. *Stewart v. District of Columbia Board of Zoning Adjustment,* D.C.App., 305 A.2d 516 (1973). Once the applicant has made the requisite showing, the Board ordinarily must grant the application, but its findings of fact and conclusions of law must be clearly and specifically stated in order to convey to the parties, as well as to the reviewing court, the grounds for the decision. *See Robey v. Schwab,* 113 U.S.App.D.C. 241, 245, 307 F.2d 198, 202 (1962).

The zoning regulation in question here, § 3101.46, provides for a special exception to permit college or university uses in a residential district. The granting of such an exception by the Board is contingent upon a showing that the proposed activity "is not likely to become objectionable to neighboring property because of noise, traffic, number of students, or other objectionable conditions." D.C. Zoning Regs. § 3101.-46(a). The applicant must also submit various detailed plans for future development of the campus, including proposed density levels in the area subject to the special exception. In addition, the application must be submitted for review and report to the National Capital Planning Commission (NCPC) and the Director of the Department of Highways and Traffic. *Id.* §§ 3101.46 to 3101.46(e).

■■ Accordingly, the Board, in order properly to grant the special exception requested by intervenor Georgetown University, was required by § 3101.46(a) of the Zoning Regulations to find as a matter of fact that it is "not likely" that the noise, traffic, number of students, and other conditions generated by the University's presence in an existing residential district would "become objectionable to neighboring property." The Board made no such finding of fact.[2] Although petitioners and other parties opposing the University's application for a special exception objected strenuously that increased automobile traffic in Georgetown (which they asserted was already overcrowded) would result from the University's proposed use and much of the evidence in the record related to the traffic congestion problem, the Board's findings scarcely touch on the issue of traffic. Indeed, the closest that the Board came to making the required finding that the traffic resulting from the proposed use would not be objectionable was in Findings No. 29 and No. 30:

29. The Board takes notice of the fact that a commercially zoned district exists approximately five blocks away from the Georgetown University Campus on Wisconsin Avenue.

30. The Board finds that the traffic congestion and level of noise in the subject neighborhood is not caused solely by the University uses which exist in this area.

These findings clearly do not satisfy the requirements of § 3101.46(a) for they make no statement at all as to whether traffic *increases* occasioned by the university use in a previously residential district would likely become objectionable. It is not sufficient for the Board merely to identify other sources of traffic and noise in addition to that generated by the university presence and uses. Rather, the Board is required to make unequivocal and specific findings concerning the incremental traffic, noise and other conditions attributable to the proposed university exception and to determine whether such results

2. The Board did conclude in its "Opinion and Conclusions of Law" that the proposed university uses "are not likely to become objectionable by reason of noise, traffic and increase of number of students," but no facts were stated to support that conclusion. Furthermore, we have consistently rejected conclusions which "simply echo the statutory language" authorizing the grant of a variance or special exception. *Palmer v. District of Columbia Board of Zoning Adjustment,* D.C. App., 287 A.2d 535, 538 (1972) ; *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 293 A.2d 470, 473 (1972).

would in the future be objectionable to neighboring property.[3]

The Board's findings are also deficient on account of several obvious and material inaccuracies contained in them. With respect to the report of the Department of Highways and Traffic (Department), the Board found:

> As required by paragraph 3101.46(e) of the Regulations the Department of Highways and Traffic reported, and the Board finds that because of the volume of traffic into Canal Road from the university's south access road especially during the peak hours of traffic that the south bound [sic] access road should be enlarged to three (3) lanes. The report also recommended, and the Board finds that an at grade intersection be created at the point where the southbound access road connects with Canal Road.

However, the Department's report was contrary to this finding by the Board; the Department actually recommended that a "grade separation" be constructed rather than an "at grade intersection," since the latter would result in unacceptable congestion on Canal Road. Furthermore, the Department made no recommendation that the southbound access road be widened to three lanes, though its report did mention proposals to widen Canal Road westbound to four lanes and eastbound to three lanes.[4]

Finally, the Board found that at the present time 65% of the traffic generated by the University entered the campus from the south access road via Canal Road, 25% through the main entrance on 37th Street, and 10% through the medical center; when, in fact, according to the record, those percentage figures represented projections made by the University planners *in the event* that its special exception were granted and its traffic patterns altered significantly.[5]

■ We cannot accept these inaccuracies as mere "nonprejudicial error," as intervenor Georgetown University has urged.[6] The concept of harmless error has limited utility in an administrative proceeding such as this where our review, to be meaningful, must depend upon the accuracy of the administrative body's fact-finding procedure. If, as here, the facts found by the administrative body are clearly inaccurate, the court has no choice but to remand for clarification.

■ In sum, the facts found by the Board were deficient because of both significant errors and omissions, and accordingly, the Board's conclusions of law cannot stand because they are not premised upon facts properly found in the administrative process.

■ In addition to the inadequacies of the Board's findings of fact, there is another compelling reason why the Board's decision must be reversed. In its order of July 11, 1974, the Board granted the application of intervenor Georgetown University for a special exception, contingent upon its fulfillment of certain conditions.[7] A

---

3. This court will not infer the required findings of fact from other findings made by the Board. *Dietrich v. District of Columbia Board of Zoning Adjustment, supra* at 472.

4. Since Canal Road is a public thoroughfare, we presume that its relocation and widening to accommodate the increased flow of traffic, should the University route most of its traffic through a south access road, is beyond the power of the University itself to accomplish.

5. Actually, evidence offered by the University showed that *at present,* 65% of its traffic is served on Georgetown's residential streets.

6. The University argues that the mistakes are not prejudicial because in Condition No. 10 the Board has required roads and access ways to be constructed in accordance with Exhibit A, page D, of the University's master plan, which is, arguably, an accurate depiction of the Board's true intentions. We believe that the inconsistency between the Board's finding and the Board's Condition merely emphasizes the necessity for remand. We note in passing that as between a Board *finding* and an exhibit incorporated by reference by the Board into a Condition, we would hold that the specific finding was controlling.

7. The Board may impose reasonable conditions upon the grant of a special exception

number of these conditions dealt with density requirements and aesthetic considerations. There were, in addition, several conditions designed to ameliorate the serious traffic problems which the record showed might result from the University's plans. Conditions No. 7 and No. 8 provided:

7. That the university close all automobile entrances on 37th Street which allow traffic flow into its main campus area from 37th Street, N.W.

8. That the university construct a three-lane at-grade intersection where its south access road connects with Canal Road.

Presumably, the imposition of these conditions was prompted by evidence in the record relating to traffic congestion in Georgetown, even if that evidence was not detailed properly in the Board's findings of fact.

Subsequent to the release of the July 11 order and in response to inquiry by the University's counsel, the Board issued on October 21, 1974 what it termed an "interpretation" of Conditions 7 through 10 of its order. Petitioners urge, and we agree, that the October 21 memorandum was more than merely an "interpretation"; in fact, it amounted to a substantial modification of the original order. The October 21 memorandum stated that Condition No. 8, *viz.*, the construction of a three-lane intersection at the junction of the University's south access road and Canal Road, was viewed as "contingent upon and cannot be performed until the Department of Highways and Traffic completes its proposal to widen Canal Road." Given these contingencies, the Board observed, "it would not be reasonable to close off the 37th Street access to the campus before the south access road to the campus has been widened

in order to accommodate more vehicles during peak hours of traffic."

Regardless of how inappropriate the conditions imposed by the Board in July may have seemed to the Board on October 21, the fact remains that the evidence adduced in connection with the University's application showed the conditions to be necessary, as the original order reflected in July. The Board's "interpretation" of these conditions in October is distinctly contrary to the plain meaning of its original order in July and results in a material revision of the terms under which the special exception was granted to the University. In the absence of proper notice and opportunity to be heard, such action is in violation of the District of Columbia Administrative Procedure Act and must be declared invalid. *See* D.C.Code 1973, § 1–1509.

Aside from the procedural irregularity of the Board's action in rewriting the conditions imposed by the original order, we do not see how the evidence in the record would support the result embodied in the Board's October 21 "interpretation" memorandum. The evidence showed that Georgetown already has traffic problems of great consequence and that the proposed special exception *could* create more such problems in the absence of remedial measures by the University regarding parking and traffic flow. The conditions imposed in the original order represented an effort by the Board in July to deal with those problems. If, as the October 21 memorandum suggests, the conditions are not likely to be met, then it seems clear that the proper course of action is not to dilute the effectiveness of those conditions which under the evidence had been determined by the Board to be necessary; rather, consideration should be given to denial of the grant of the special exception until such time as the University can satisfy the conditions.[8]

---

to insure that it will be in harmony with the zoning regulations, and such conditions should be enforced if the applicant takes advantage of the special exception's benefits. *See Nathanson v. District of Columbia Board of*

*Zoning Adjustment*, D.C.App., 289 A.2d 881 (1972).

8. The October 21 memorandum leaves considerable doubt as to the time frame in which the conditions are to be satisfied. There is

In the instant case, since it appears that the Board's conditions may be beyond the power of the University to fulfill because they are contingent upon the widening and perhaps the relocation of a public street, we conclude the Board should reconsider its action and decide the issues so raised. While there is potential for hardship to the University and its expansion needs, it also appears that the zoning regulations demand the delay of University expansion into the neighboring residential district until the Board determines *upon the record* that surrounding streets and roads are presently sufficient to enable the university to meet all the various conditions which the Board found to be required.

For the above reasons, we reverse and remand this case to the Board for further consideration not inconsistent with this opinion.

*Reversed and remanded.*

some indication that the conditions need not be met prior to the conclusion of the University's current development plans in 1985. To grant a special exception contingent upon the fulfillment of conditions that far in the future, at least where the conditions seem necessary to protect surrounding residential property from traffic congestion and other problems, seems questionable. And, of course, fulfillment of the conditions is made even more remote by the fact that they are dependent upon public action, *viz.*, the widening and relocation of Canal Road.