The **VESTRY OF GRACE PARISH,** also known as Grace Episcopal Church and Citizens Association of Georgetown, Inc., Petitioners,

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD,**
Respondent,

**John C. Pyles, III, et al., Intervenors.**

**No. 10315.**

District of Columbia Court of Appeals.

Argued July 15, 1976.

Decided Dec. 1, 1976.

Rehearing and Rehearing en Banc
Denied March 7, 1977.

Courts Oulahan, Washington, D. C., with whom Austin P. Frum, Washington, D. C., was on the brief, for petitioners.

Richard H. Lane, John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton, James N. Dulcan and E. Calvin Golumbic, Asst. Corp. Counsels, Washington, D. C., for respondent and intervenors.

Before GALLAGHER, Associate Judge, PAIR, Associate Judge, Retired, and WASHINGTON, Associate Judge, Superior Court.*

WASHINGTON, Associate Judge:

This is an appeal from a decision of the Alcoholic Beverage Control Board granting a Class C liquor license to intervenors John C. Pyles III and Richard A. Stewart, t/a Grace Street Junction (hereinafter "Intervenors"). Petitioners are the Citizens Association of Georgetown ("the Association"), the sole protestant in the proceedings before respondent District of Columbia Alcoholic Beverage Control Board ("the Board"), and the Vestry of Grace Parish ("Vestry") whose attempt to intervene therein was unsuccessful.

### FACTS

On May 22, 1975, Intervenors applied for a Class C liquor license to permit the restaurant they proposed to open at 3210 Grace Street, N.W. to serve beer, wine, and spirits for consumption on the premises. Protests were registered with the

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

Board by petitioner Association and by individual neighborhood residents, who alleged that issuance of this license would not be appropriate to the character of the neighborhood or in conformity with the wishes of the community. A hearing was set for June 26, and later continued to July 23 at the request of the Association, when testimony was taken upon these issues. At that hearing, the Association also moved to dismiss the application, citing Section 2.2 of the General Alcoholic Beverage Control Regulations which prohibits the issuance of a Class C license to an establishment within four hundred feet of the "nearest street main entrance" of a church with a membership of one hundred or more. Reference was made in the motion to Grace Episcopal Church, located at 1041 Wisconsin Avenue N.W., which can be reached through either of two street entrances, one on Wisconsin Avenue and one on South Street.

It having been assumed by all concerned that the enrolled membership of Grace Church was larger than one hundred, the Board's investigation was limited to taking measurements between the entrance of the proposed restaurant and the two entrances to the church grounds. At a further hearing on July 31, it was established by the testimony of the Board's investigators that the Wisconsin Avenue entrance to the church property is within the proscribed distance of the proposed restaurant, but that the South Street gate is not. Accordingly, in an effort to identify the "nearest street main entrance", a use survey was conducted on August 3 which showed that approximately forty-five persons entered the church grounds from South Street and approximately nineteen from Wisconsin Avenue. After several postponements at the request of the Association, the Board on October 7 held a hearing to explore the validity of the survey. At that time the rector of Grace Church stated during cross-examination that his congregation had seventy to seventy-five members, an issue not addressed previously by either party.

On December 10, the Board denied motions by the Vestry to reopen, to correct the record, and to intervene. The next day the Board, pursuant to written findings that the South Street gate is the nearest "main street entrance" of Grace Church, that the church has an enrolled membership of less than one hundred, and that the granting of Intervenors' application is appropriate to the character of the neighborhood and the wishes of residents, issued a Class C liquor license to Intervenors. This appeal followed.

## ISSUES

Petitioners' assignments of error can be reduced to three questions: Was the Board's finding that Section 2.2 did not preclude as a matter of law the issuance of this license supported by substantial evidence? The sufficiency of the evidentiary support for this decision notwithstanding, was the Board justified in declining the additional information proferred by the Vestry? Was the Board's finding of appropriateness supported by substantial evidence? Finding no error requiring reversal, we affirm.

I. *Was the Board's determination that issuance of this license is not precluded by Section 2.2 supported by substantial evidence?*

 We begin with the proposition, put forward by both petitioners and respondent, that the scope of this court's review is limited to a determination of whether the Board's decision is supported by substantial evidence. *Citizens Association of Georgetown v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 280 A.2d 309 (1971). Substantial evidence has been defined by the Supreme Court as

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [*Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).]

*See also Wallace v. District Unemployment Compensation Board,* D.C.App., 294 A.2d 177 (1972), for an application of the foregoing definition by this court.

 Section 2.2 of the General Alcoholic Beverage Control Regulations, 3 DCRR 2.2, reads in pertinent part as follows:

(a) No license . . . shall be issued for any place of business within 400 feet of any . . . church . . . Provided, That this subsection shall not forbid . . . the issuance of a license in the discretion of the Board for a place of business located within 400 feet of a church if (1) the Board is satisfied that such church has an enrolled membership of less than 100 persons.

. . .

(b) Said distance shall be measured between the nearest street main entrance to said place of business and the nearest street main entrance to said . . . church. . . .

This regulation clearly means that the Board cannot issue a liquor license for an establishment whose nearest street main entrance is within four hundred feet of the nearest street main entrance of a church having one hundred or more members. While the existence of these conditions is a question for the Board, where these facts are established the prohibition against issuance of a liquor license is absolute. In the instant case, the Board found that the nearest street main entrance of the church was not within four hundred feet of the nearest street main entrance of the proposed restaurant, and also that the enrolled membership of the church was less than one hundred,[1] and therefore did not apply the prohibition of Section 2.2. Thus, the first question before the court is whether there is sufficient evidence to support the Board's factual determination.

 Turning first to a consideration of the testimony concerning the membership of the church, this court finds that the facts before the Board did constitute substantial evidence. The evidence of record consists of a statement by Reverend Tartt, rector of Grace Church, that he believed the enrolled membership to be seventy to seventy-five persons. This affirmation, made by one who could reasonably be believed to have first-hand knowledge of this fact, was repeated three times. It stands uncontradicted on the record although two other members of the vestry testified subsequent to its utterance. The court concludes that this is evidence which a reasonable mind might find sufficient to support this conclusion, and therefore that the Board's findings are supported by substantial evidence. Having made this determination, the court need not consider whether the Board correctly decided that the South Street gate is the nearest street main entrance, since Section 2.2 does not prohibit the issuance of a liquor license in any proximity to a church whose membership is less than one hundred.[2]

We come thus to petitioners' next assignment of error, that the evidence proffered by petitioner Vestry in support of its motions to correct the record, to intervene, and to reopen proceedings would have required a different determination on the applicability of Section 2.2 and should, therefore, have been accepted by the Board.

II. *Did the Board err in denying the motions by the Vestry to correct the record, to intervene, and to reopen?*

The sufficiency of the evidence before the Board notwithstanding, the Vestry con-

---

1. Findings numbered 15 and 16, respectively, of the Findings of Fact and Conclusions of Law issued by the Board on December 11, 1975.

2. This should not be taken as approval of the Board's method of determining the nearest street main entrance, however. If a survey is to be used, it should be conducted according to established principles designed to assure a full and unbiased sample.

tends that it was error for the Board to refuse additional evidence. Specifically, petitioner attacks the actions of the Board in refusing, through denial of its motions, to reconsider and to supplement with additional testimony the evidence underlying its determination that Section 2.2 does not prohibit the issuance of this license.

■ The motion to correct the record was addressed to the question of the enrolled membership of the church. Petitioner contends that the Board, having taken testimony on this question, should have granted the motion to correct the record upon the discovery by the witness, Reverend Tartt, that he had been in error. We disagree. As respondent points out, Section 20.16 of the General Alcoholic Beverage Control Regulations, 3 DCRR 20.16, reads in pertinent part as follows:

> A motion to correct a transcript shall be filed with the Board within ten (10) days of receipt of the transcript. . . .
> . . . .

The instant motion was filed more than one month after the issuance of the transcript, and almost two months after the commission of the alleged error by Reverend Tartt. No explanation for this delay appears in the record, nor is there any indication that one was ever offered. In fact, it would seem under these circumstances, that with any diligence whatsoever, petitioner could have discovered this alleged error within the time provided by Section 20.16. The court thus finds no basis for disturbing the Board's decision.

■ The Board also had ample justification for declining to reopen the record to hear evidence allegedly newly discovered which would cast doubt on the validity of the survey. This matter had been thoroughly litigated, with both parties represented by counsel, over a period of several months. All concerned, including a nonparty, petitioner Vestry, had sufficient opportunity to present evidence. Particularly in light of the Board's indulgence with regard to the many requests for continuances and other postponements instigated by the opponents of this application, the court cannot hold that the Board abused its discretion in preventing what had the appearance of yet another delaying tactic. Litigation must end sometime. *Easton Utilities Commission v. Atomic Energy Commission,* 137 U.S.App.D.C. 359, 424 F.2d 847 (1970). It is also significant that, in view of our decision that an identification of the street main entrance is unnecessary in this case, the correctness of the Board's determination on this issue is without import; any error would be harmless.

■ Similarly, the court finds that the Board did not err in denying the motion of the Vestry to intervene. Although not a party to the proceedings, this petitioner had participated throughout by the attendance and testimony of Reverend Tartt and other parishioners. It had notice of all hearings, and therefore could have made a timely motion to intervene if this appeared necessary to protect its rights. Instead, petitioner delayed until after all hearings had been completed, the transcript issued, and proposed findings submitted by the intervenors, and then on the very eve of the Board's decision made the motions here under consideration. Having thus chosen not to enter an appearance earlier, although fully aware of the existence and nature of the proceedings and their possible consequences, petitioner cannot now expect the court to permit it to relitigate this matter. *See Red River Broadcasting Co. v. Federal Communications Commission,* 69 App.D.C. 1, 98 F.2d 282 (1938), and *Easton Utilities Commission v. Atomic Energy Commission, supra.*

For all the foregoing reasons, the court finds no error in the Board's determination that Section 2.2 does not apply. There is ample support in the record for its decision that the issuance of the instant license is not thus prohibited, and further that no additional information was required under these circumstances.

III. *Was the Board's finding of appropriateness supported by substantial evidence?*

The D.C.Code 1973, § 25–115(a)(6) provides that before issuing a liquor license, the Board must determine:

That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.

Accordingly, the Board made findings of fact upon the evidence and concluded that:

The premises qualify as appropriate for the issuance of a Retailer's License Class "C"—Restaurant—under Section 14(a) 6 of the Act (25–115(a) 6, D.C.Code, 1973 Edition) . . . .[3]

In considering whether the Board's finding of appropriateness is correct, the court is again confined to the substantial evidence standard. *See Citizens Association of Georgetown v. District of Columbia Alcoholic Beverage Control Board, supra.* Examination of the record reveals evidence which the court finds to be sufficient to sustain this conclusion. It appears that the proposed restaurant will be located in an area which has been characterized as commercial,[4] one whose W–1 zoning provides for the operation of a restaurant, among other businesses, as a matter of right.[5] The proposed facility will seat only seventy-four persons, and off-street valet parking will be provided for patrons. No live entertainment will be offered, and ample arrangements have been made for the collection of refuse. A cinder bock wall surrounds the premises, dividing it from the commercial properties which it abuts. Six persons, including three local property owners or their agents, testified in favor of the intervenors' application. In contrast, although protests to the proposed license were registered with the Board in the form of a petition bearing fifty-nine signatures and through five detailed letters, the petition was never proved and the authors of four of the protest letters did not appear at the hearing. The only protestant to enter an appearance was the Association, which cited, among other reasons, a policy of opposing the issuance of all new liquor licenses in the Georgetown area. Under these circumstances, the Board's findings of appropriateness is supported by substantial evidence. D.C.Code 1973, § 1–1510(3).

## CONCLUSION

No reversible error having been demonstrated, the decision of the Alcoholic Beverage Control Board granting a Class C liquor license to intervenors John C. Pyles III and Richard A. Stewart must be and hereby is

*Affirmed.*

3. Conclusion 5 of the Findings of Fact and Conclusions of Law issued by the Board on December 11, 1975.

4. R. 76.

5. *See* Respondent's Exhibit 8.