FRIENDSHIP NEIGHBORHOOD
COALITION, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,

Safeway Stores, Inc., Intervenor.

No. 13551.

District of Columbia Court of Appeals.

Argued Jan. 18, 1979.

Decided May 31, 1979.

Aidan D. Jones, Washington, D. C., for petitioner.

Richard W. Barton, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., entered appearances for respondent and adopted the brief of intervenor.

Arthur B. Hanson, Washington, D. C., with whom Alexander W. Whitaker, Washington, D. C., was on the brief, for intervenor.

GALLAGHER, Associate Judge:

This is an appeal from a decision of the District of Columbia Board of Zoning Adjustment (Board) conditionally granting an application for two special exceptions. The order grants intervenor Safeway Stores, Inc. (Safeway) exceptions under Zoning Regulations § 3101.48 to build a parking lot for a planned expanded Safeway store, and under § 7203 to reduce the number of parking spaces required for the expanded store. A smaller store and parking lot presently exists on the adjoining lot east of the site. Petitioner asserts numerous grounds for reversal and, finding none to be meritorious, we affirm.[1]

I.

The existing Safeway store is in the commercially zoned C–2–A zone at 4840 42d Street, N.W., just west of Wisconsin Avenue, N.W. It has gross floor area of 14,639 square feet and has a parking lot providing 76 parking spaces. The proposed store is to be built on the same lot where the existing store is situated.[2] It will have 38,085

square feet of floor area and under the zoning regulations will require a minimum of 136 parking spaces. To accommodate the additional parking space requirements, Safeway seeks to convert the adjoining site, which is currently vacant, into a parking lot. The site, however, is in the residentially zoned R–2 zone. A special exception is required to build a parking lot there. Although the area immediately surrounding is largely undeveloped, west of the store it is a residential neighborhood.

Safeway submitted its proposed plans to the Board along with testimony in favor of the application, including some from residents of the area. The original design submitted called for a 145-space lot. It was to be surrounded by a 12-inch thick brick wall around its perimeter. The height was to vary from 42 inches to 72 inches. Landscaping was to be placed outside the wall. The Department of Environmental Services reported that there were deficiencies in the storm water drainage system in the area, and so Safeway submitted a modified design which was approved by DES. In addition, at the Board's request Safeway increased the amount of landscaping and reduced the number of parking spaces to 136 in its proposed plan.

Advisory Neighborhood Council 3–E (ANC) appeared and opposed the application on grounds that the application constituted an unacceptable intrusion of commercial usage into a residential neighborhood. Petitioner and certain nearby property owners also opposed the application on grounds that increased noise, traffic, light and air pollution from the lot would adversely affect the residential character of the neighborhood. The Board disagreed with these contentions and granted both exceptions on the condition that the parking lot be built with all the required modifications and comply with design require-

---

1. Intervenor requests that we assess counsel fees incurred for this appeal against petitioner pursuant to D.C.App.R. 39(b). This request is denied.

2. No special exception is required for intervenor to expand the existing store on the com-

mercially zoned portion of the lot. The only matter requiring action by the Board is whether Safeway may use the site in the R–2 zone for a parking lot for the expanded store. The Board found that the site is the only feasible place to provide the required parking at this time.

ments in § 7404 of the Zoning Regulations. This petition for review followed.

## II.

█ We first address petitioner's argument that the Board reached its decision under the wrong regulation. The Board decided that § 3101.48 of the Zoning Regulations rather than § 3101.411 should be the provision governing this application. Both provisions apply to special exceptions in the R–2 zone. Section 3101.48, however, pertains to "parking lots" and § 3101.411 pertains to "parking spaces" that are "accessory" to another use. The Board concluded that the "parking lot" requirements should apply since there would not be any use other than parking in the R–2 zoned portion of the site. We do not find the Board's interpretation to be "plainly erroneous or inconsistent with the regulation[s]," and it is therefore controlling. *Wolf v. District of Columbia Board of Zoning Adjustment,* D.C.App., 397 A.2d 936, 942 (1979); *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282, 286 (1974).

Petitioner's contention that the Board arbitrarily and capriciously failed to deny the application outright is also without merit. Petitioner bottoms this argument on the premise that the Board must look to the general purposes of the zoning regulations as set out in D.C. Code 1978 Supp., § 5–414 [3] when deciding whether to grant a special exception application, and that the Board here failed to do so. However, this same argument was rejected in *Rose Lees Hardy Home & School Association v. District of Columbia Board of Zoning Adjustment,* D.C.App., 343 A.2d 564, 566–67 (1975) (hereinafter *Rose Lees II*). In *Rose Lees II,* the Board looked only to the applicable zoning regulations, not to the general purposes statutory provision of D.C. Code 1973, § 5–414 in granting a special exception. It concluded that although D.C. Code 1973, § 5–420 directed that "special exceptions" be in harmony with the general purposes of the zoning regulations, these general purposes were not directly applicable to special exception adjudicatory-type *proceedings.* The Board reasoned:

> We start with the proposition that in determining whether to grant a special exception, the Board's discretion is controlled by those adjudicatory standards set forth in the Zoning Regulations. . . The standards set forth in D.C. Code 1973, § 5–414 are legislative standards which guide the Zoning Commission when it legislatively promulgates zoning regulations. In special exception cases, these statutory standards do not speak directly to the Board of Zoning Adjustment, but only indirectly as they have been legislatively implemented by the Zoning Commission. In short, when ruling on special exception applications, the Board must presume that the legislative purposes set forth in D.C. Code 1973, § 5–414 are embodied in the Zoning Regulations as written.
>
> Thus, the question for the Board is not whether the granting of this application will "create conditions favorable to . . educational opportunities, and . . . would tend to further economy and efficiency in the supply of public services" (D.C. Code 1973, § 5–414), but whether the granting of this application meets the requirements contained in the relevant Zoning Regulations. . . . [*Id.* at 566.]

---

3. This section provides that the zoning regulations shall be designed.

to lessen congestion in the street, to secure safety from fire, panic, and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the undue concentration of population and the overcrowding of land, and to promote such distribution of population and of the uses of land as would tend to create conditions favorable to health, safety, transportation, prosperity, protection of property, civic activity, and recreational, educational, and cultural opportunities, and as would tend to further economy and efficiency in the supply of public services. Such regulations shall be made with reasonable consideration, among other things, of the character of the respective districts and their suitability for the uses provided in the regulations, and with a view to encouraging stability of districts and of land values therein.

We found no fault with this interpretation by the Board of the relevant statutes and regulations. *Id.* at 567.

■■ We reject petitioner's contention that approval of the application amounted to illegal rezoning. Until such time as the District of Columbia adopts a comprehensive plan, to constitute illegal "spot zoning" the Board's action "must be inconsistent . . . with the character and zoning of the surrounding area." *Citizens Association of Georgetown v. District of Columbia Zoning Commission,* D.C.App., 402 A.2d 36 at 40 (1979). There was evidence in the record that the enlarged parking lot will not be out of character with the surroundings. The record showed that the lot is adjacent to a heavily commercial district and that the area around the subject site in the R–2 zone is largely vacant and undeveloped. Significantly, the Municipal Planning Office recommended approval of the application on grounds that the improved Safeway store would be consistent with general city policy and would provide a needed facility in the area. This evidence was ample to support the Board's finding that the lot would not adversely affect the character of the neighborhood. Thus, the Board did not engage in illegal rezoning. *See generally id.,* at 39–41.

■ After the hearing had terminated, the Board re-opened the record to allow written comments addressed to drawings regarding the storm water system worked out by Safeway's engineers to meet with the requirements of the Department of Environmental Services, which plans that Department had approved. Written comments were received from petitioner. It (a) requested a re-opening of the hearings and (b) voiced the view that the planned system was inadequate. The Board then concluded there was no need to re-open the hearings on this score.

We conclude it was not error to deny petitioner's request to re-open the hearing, though resolution of all such questions before terminating a hearing avoids issues such as this. What was involved here was essentially an engineering problem.[4] Petitioner was granted the opportunity to submit a contrary expert opinion. This was not done, but instead petitioner itself disputed the engineering report. Under the circumstances of this case, we see no denial of due process in the Board's refusal to re-open the hearing.[5]

Petitioner's contentions that the Board failed to give "great weight" to the written concerns of the ANC as required by *Kopff v. Alcoholic Beverage Control Board,* D.C. App., 381 A.2d 1372, 1384 (1977), and to the oral testimony of one ANC Commissioner, are without merit. ANC's written opposition to the application was on the ground that westward expansion would be "absolutely unacceptable" because it would be an encroachment into an established residential neighborhood. This concern was specifically addressed. The Board found that there would be *no unreasonable intrusion into a residential neighborhood.* It stated that the subject site is surrounded by mostly vacant land and that Safeway had made reasonable efforts to minimize the effects of the parking lot by providing an extensive landscaped buffer zone and brick wall around the perimeter of the lot. The Board also gave consideration to this concern by further limiting the number of parking spaces to 136 and requiring additional landscaping around the lot. The Board thus satisfied the requirement of making "explicit reference to each ANC issue and concern as such [with] specific findings and conclusions with respect to each." *Kopff, supra* at 1384. With respect to the oral

4. As Safeway suggests, final determination of the adequacy of the water detention and connector systems will be made by the Department of Environmental Services during the building permit approval process.

5. *Rose Lees Hardy Home and School Ass'n v. District of Columbia Board of Zoning Adjust-*

*ment,* D.C.App., 324 A.2d 701 (1974), *is not to the contrary.* Among other things, there the parties were not given notice and opportunity to rebut; and the issue there involved was central to the proceeding and not a matter especially adapted to expert opinion, as here.

testimony of the ANC Commissioner, the statute does not require the Board to give "great weight" to such testimony, but only to the *written recommendations* of the ANC. D.C. Code 1978 Supp., § 1–171i(d).[6] In any event, the Board did address the issues raised by this testimony. The ANC Commissioner testified that approval of the exception would prove more harmful than beneficial for the neighborhood, would in the ANC's opinion be the "wrong kind of expansion," and would create a dangerous precedent for further expansion of the Wisconsin Avenue commercial corridor. Addressing these issues, the Board found that the parking lot would be "reasonably necessary or convenient to the neighborhood" and would not "become objectionable to adjoining or nearby property"[7] on account of light, noise or traffic because the brick wall and shrubs would screen out most of these conditions. It also found that the existing street system could easily accommodate the increased traffic. These findings were supported by substantial evidence in the record.

■ As to the setting of dangerous precedent, the Board found that approval of this application would not affect future applications since each must be decided on its own merits. Finally, although the Board did not expressly address the ANC Commissioner's opinion that the parking lot was the "wrong kind of expansion," there was no need to do so. We held recently:

The factors that the BZA may consider in ruling on an issue are restricted by the regulations. The ANC, as an adviser, is necessarily similarly confined by the regulations. The Council did not intend to empower the Commissions to expand the factors that a board or agency may otherwise lawfully consider in reaching its decision. Thus, we interpret "issues and concerns," as used in D.C. Code 1978

Supp., § 1–171i(d), to encompass only legally relevant issues and concerns. [*Wheeler v. District of Columbia Board of Zoning Adjustment,* D.C.App., 395 A.2d 85, 91 n.10 (1978) (citation omitted).]

The ANC Commissioner's testimony that the parking lot was the "wrong kind of expansion" was merely an opinion. It did not relate to any of the statutory criteria for granting a special exception. Thus, the Board was not required to address it specifically. *See generally id.* at 91.

■ Petitioner argues that the Board's findings are insufficient to support its decision and that its conclusion that there was substantial support in the community for the application is contrary to the evidence in the record. We have recently held that

when the findings of basic facts are each supported by sufficient evidence and, when taken together, rationally lead to conclusions of law and an agency decision consistent with the governing statute, we shall affirm that decision. [*Citizens Ass'n of Georgetown v. District of Columbia Zoning Commission, supra,* 402 A.2d at 47.]

The applicable zoning regulation sets as conditions for granting this application that:

(a) the lot will be located in its entirety within 200 feet of an existing commercial district and will be contiguous to such district;

(b) all provisions of Article 74 are complied with (relating to design of the lot);

(c) the lot is reasonably necessary or convenient to the neighborhood and is so located and all facilities thereof are so designed that they are not likely to become objectionable to adjoining or nearby property because of noise, traffic, or other objectionable conditions; and

---

6. This section provides:

Each [Advisory Neighborhood] Commission so notified . . . *shall forward its written recommendations* . . . [to] the appropriate agency . . . . The issues and concerns *raised in the recommendations* of the Commission shall be given great

weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken. [Emphasis added.]

7. Zoning Regs. § 3101.48(c).

(d) the Board shall have submitted the application to the Department of Transportation for review and report. [Zoning Regs. § 3101.48.]

The Board made careful findings as to each of these issues. Each finding of "ultimate fact" was supported by findings of "basic facts" and by substantial record evidence. The findings taken together rationally lead to the Board's conclusions of law. Therefore, we must affirm the decision. *Citizens Association of Georgetown, supra.*

*Affirmed.*