BAKERS LOCAL UNION NO.
118, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent.

No. 80–759.

District of Columbia Court of Appeals.

Argued June 18, 1981.

Decided Nov. 9, 1981.

Norman M. Glasgow, Jr., Washington, D. C., with whom Norman M. Glasgow and Carolyn J. Hamm, Washington, D. C., were on the briefs, for petitioner.

Whayne S. Quin, Washington, D. C., also entered an appearance for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

Petitioner seeks review of an order of the District of Columbia Board of Zoning Adjustment (BZA or Board) denying an application for a special exception to allow continued accessory parking in a residential area. We find that the Board did not address the "issues and concerns" of the Advisory Neighborhood Commission (ANC) in the manner required by statute, D.C. Code 1977 Supp., § 1–171i(d), and precedent, *Kopff v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372, 1383–85 (1977), and that the Board's findings and conclusions lacked support of substantial evidence. Accordingly, we remand the case for further proceedings.[1]

Petitioner, Baker's Union Local No. 118 (Union), is the owner of two adjacent lots at the intersection of Bladensburg Road and Evarts Street, Northeast. In 1970, the Union constructed its headquarters on the southeastern lot (lot 1) of 2706 Bladensburg Road. This lot is in a zoned C–2–A District (medium density commercial use) in which office buildings may be built as a matter of right.[2] The neighboring lot (lot 2) has been used by the Union for accessory parking. Lot 2 also provides access to the off-street parking on lot 1 required by the zoning regulations for Union headquarters.[3] Lot 2 is in a zoned R–1–B District (high density single-family detached dwellings). Use of lot 2 for accessory parking, therefore, must

---

1. Our disposition of this appeal renders consideration of petitioner's challenge to the BZA order denying reconsideration or rehearing unnecessary.

2. D.C. Zoning Regs., § 5102.3 (April 1981).

3. *Id.*, § 7202.1.

be authorized by the BZA through a special exception to the zoning regulations.[4]

In 1970 and 1975, the Board, over some opposition by neighbors, granted applications by the Union for special exceptions to allow parking in lot 2. In 1979 petitioner made a timely application to continue the exception. The denial of that application provides the basis of this appeal.

 The BZA's discretion in reviewing applications for special exceptions is limited to determining whether the proposed exception satisfies the relevant zoning regulations. *Stewart v. Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973), and the burden of proof is on the applicant to make the necessary showing. *Id.* If the prerequisites set out in the particular regulations are met, the BZA ordinarily must grant the application. *Id.* The applicable zoning regulations in this case provide:

3101.1 The R–1 District is designed to protect quiet residential areas now developed with *one-family detached dwellings* and adjoining vacant areas likely to be developed for such purposes. The regulations are designed to stabilize such areas and to promote a suitable environment for family life. For that reason only a few additional and compatible uses are permitted. The *district* is subdivided by different area requirements into R–1–A and R–1–B Districts, providing for *districts* of low and high density, respectively.

3101.2 Except as provided in Chapter 7 of these regulations, in any R–1 District no *building* or premises shall be used and no *building* shall be erected or altered which is arranged, intended, or designed to be used except for one or more of the uses listed in the following paragraphs.

\* \* \* \* \* \*

3101.4 The following uses are permitted if approved by the Board of Zoning Adjustment subject to the conditions specified in Section 8207[5] and below in each case:

\* \* \* \* \* \*

3101.410 Accessory passenger automobile *parking spaces* elsewhere than on the same *lot* or part thereof on which the main use is permitted, except for a *one-family dwelling*, provided that:

\* \* \* \* \* \*

3101.4104 Such *parking spaces* are so located and facilities in relation thereto are so designed that they are not likely to become objectionable to adjoining or nearby property because of noise, traffic or other objectionable conditions .... [D.C. Zoning Regs., § 3101.1 *et seq.*]

The narrow issue, then, which the BZA was faced with deciding was whether section 3101.4104 had been satisfied.

 Decisions by administrative agencies of the District of Columbia must satisfy the substantial evidence test which is derived from the contested cases provision of the D.C. Administrative Procedure Act, D.C. Code 1973, § 1–1509(e). This test was articulated recently in *Citizens Association of Georgetown, Inc. v. Board of Zoning Adjustment*, D.C.App., 402 A.2d 36, 41 (1979), as follows:

(1) there must be findings on "each contested issue of fact," § 1–1509(e); *see Dietrich v. Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 472–73 (1972); (2) the decision must rationally follow from the facts, ... (3) there must be sufficient evidence supporting each finding ....

 An agency generally is free to credit, without explanation, non-expert tes-

---

4. *Id.*, §§ 3101.4, 3101.410.

5. Section 8207.2 provides:
 Pursuant to authority contained in the Zoning Act of June 20, 1938 (52 Stat. 797), as amended, the Board is authorized to grant special exceptions as provided in the proceeding Articles of these regulations where in the judgment of the Board such special ex-

ceptions will be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property in accordance with said zoning regulations and maps, subject in each case to the special conditions specified in said Articles....

timony[6] of a witness, even in the face of directly conflicting evidence by an opposing witness, so long as there is sufficient supporting evidence in the record for that position. *See Citizens Association of Georgetown, Inc., supra,* 402 A.2d at 44–47. Advisory Neighborhood Commissions, however, occupy a special position in the District of Columbia. By statute, when the ANC submits written recommendations to an agency,

> [t]he issues and concerns raised in the recommendations of the Commission shall be given great weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken. [D.C. Code 1977 Supp., § 1–171i(d).]

■ This "great weight" requirement was fleshed out in the *Kopff* decision:

> [A]n agency must elaborate, with precision, its response to the ANC issues and concerns. It is a statutory method of forcing an agency to come to grips with the ANC view—to deal with it in detail, without slippage.... [T]he agency must articulate why the particular ANC itself, given its vantage point, does—or does not—offer persuasive advice under the circumstances.... "[G]reat weight" implies explicit reference to each ANC issue and concern as such, as well as specific findings and conclusions with respect to each. [*Kopff; supra* at 1384.]

The requirement, of course, extends only to those issues and concerns that are "legally relevant." *Wheeler v. Board of Zoning Adjustment,* D.C.App., 395 A.2d 85, 91 n.10 (1978). In other words, in a case such as this one, ANC concerns must "relate to ... the statutory criteria for granting a special exception." *Friendship Neighborhood Coalition v. Board of Zoning Adjustment,* D.C. App., 403 A.2d 291, 295 (1979).

In connection with the Union's application for a continued special exception to use lot 2 for accessory parking, the Board held a public hearing, on August 15, 1979, and received written submissions before and after that hearing. Although conflicting evidence was presented, the Board apparently credited that which suggested that the accessory lot had become an after-hours hangout for a group of men and boys whose activities greatly disturbed neighboring and nearby property owners. Faced with deciding whether the accessory lot was designed so that it would not be "likely to become objectionable to adjoining or nearby property because of noise, traffic or other objectionable conditions...," D.C. Zoning Regs., § 3101.4104, the Board looked to this evidence and denied the application.

Through testimony at the hearing and in writing afterwards, the local ANC representative recommended, in essence, that the BZA grant the application subject to specified conditions calculated to end the disturbances. The ANC was concerned that refusing the exception would not stop unauthorized use of the lot. To the contrary, denial of the exception would leave lot 2 "without necessary management and oversight." (Record at 207.) The ANC's recommendation, on the other hand, would serve the interests of both groups—allowing continued accessory parking, but forcing the Union to restrict effectively after-hours use of the lot.

In its Findings of Facts and Conclusions of Law the Board indicated its awareness of the special position of the ANC. Finding No. 17 begins: "The Board is required to give great weight to the issues and concerns of the ANC." (Record at 133.) The Conclusions of Law include the assertion: "The Board has addressed the concerns of the ANC in Finding No. 17." (Record at 134.)

The Board stated further that it "agrees with the ANC that it would appear to be more beneficial to the immediate residents and the applicant that the parking lot remain in operation with the responsibility of its maintenance and use resting with the applicant." (Record at 133.) Nevertheless,

---

6. Agencies are not required to accept expert testimony over lay testimony, but some indication of the reasons for rejecting expert, as opposed to lay, testimony is required. *Shay v. Board of Zoning Adjustment,* D.C.App., 334 A.2d 175, 178 n.10 (1975).

the application was denied. The Board found

> that the present management has had time to address itself to the concerns of the immediate neighbors and has failed to do so. . . . Such actions reflect a lack of responsibility on the part of the applicant. . . . This Board cannot predict that the applicant would be more responsive in the future regardless of the remedial measures it now proposes. [Record at 133.]

■ Assuming arguendo that these findings and conclusions satisfy the demands of the substantial evidence test, the BZA has failed to comply with the law regarding ANCs. The ANC's major concern in this case, and the impetus for the opposition to this application, was the problem of unauthorized and disruptive use of the subject lot. This concern is "legally relevant," *Wheeler, supra*, as was recognized by the Board. The ANC's aim was to bring the applicant clearly within the restrictions of Section 3101.4104 of the regulations by ensuring that no disruption of the neighborhood would take place. Although the Board acknowledged this ANC concern, mere acknowledgment does not satisfy the mandate of statute and precedent. The BZA must delve deeper, must "come to grips with the ANC view . . . deal with it in detail, without slippage." *Kopff, supra* at 1384. The findings and conclusions here do not meet this standard.

The Board, in Finding No. 17, looked to its assessment of past Union and neighborhood interaction and predicted that the Union would not be more responsive to neighborhood concerns in the future. This forecast may explain why the BZA concluded that the Union should not be given the benefit of a special exception, but it sidesteps the central issue—controlling the use of lot 2. The Board could have suggested feasible alternative methods of dealing with objectionable disturbances that would render the ANC plan unnecessary. In a different context, the Board might point to evidence in the record which suggests that the ANC's concern is misplaced or unfounded.

This sort of treatment would satisfy the requirement that the Board "articulate why the particular ANC itself, given its vantage point, does—or does not—offer persuasive advice under the circumstances." *Kopff, supra* at 1384.

An illustrative analogy may be drawn to cases in which this court has held that the findings required of administrative agencies in contested cases, see D.C.Code 1973, § 1–1509(e), are insufficient if they merely summarize testimony and other evidence rather than make definite determinations on disputed issues of fact. *See Washington Ethical Society v. Board of Zoning Adjustment*, D.C.App., 421 A.2d 14, 16–17 (1980); *Citizens Association of Georgetown, Inc. v. Board of Zoning Adjustment*, D.C.App., 365 A.2d 372, 375–76 (1976); *Dietrich v. Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 472–73 (1972). Similarly, the Board in its findings here, has summarized the position of the ANC, and has rejected it, without resolving the ANC's principal concern.

The Board must respond to that concern and must indicate why the ANC's response—to secure the lot with chain or gate, to ensure adequate lighting, to repair broken fencing, to post "No Trespassing" signs, and to put the police on notice that any use of the lot other then for parking is unauthorized—was not sound or necessary. The Board's failure to do so here was error.

Since we must remand, we take this opportunity to point out certain deficiencies in the findings and conclusions of the BZA. All of the findings, other than No. 17, are summaries of the testimony and other evidence. The shortcomings of such findings already have been discussed.

■ The Board's disposition of this application also is subject to challenge on the grounds of the substantial evidence test. In evaluating compliance with Section 3101.4104 of the regulations, the Board was required to predict the Union's probable future behavior and gauge its impact on the neighborhood. In ordering denial of the application, the Board relied heavily on past conduct, presumably as an indication of a pattern of interaction with the neighbors that would continue.

The record does not support the conclusion that, during the period from which examples of conduct are drawn, the Union maliciously, or even consciously, ignored the complaints of the neighbors. More recent indications in the record were that the Union was taking measures to improve the situation. (Record at 101–06.) Furthermore, although it is not clear from the record whether this information was before the BZA when it entered its order, there were suggestions in the record that the neighbors were interested in settling their dispute with the Union, as recommended by the ANC, rather than having to deal with a totally unsupervised lot.[7]

The Board erred in not making "findings of fact of a 'basic or underlying nature' about the future impact" on the neighborhood of a continued special exception. *Washington Ethical Society, supra* at 17. In this case, lay observations of past conduct of the Union are not sufficient supporting evidence. *See id.* By relying on the remote rather than on the recent in making a prediction about future behavior, the Board fails to follow a rational progression from its findings to its conclusions. Its findings, moreover, are not supported by sufficient evidence in the record. In short, the BZA does not meet the requirements of the substantial evidence test. *See Washington Ethical Society, supra*, at 17–18; *Georgetown Citizens, supra*, 365 A.2d at 374–76.

To correct these deficiencies and to dispose of ANC issues and concerns, this case is remanded to the BZA for further proceedings in accordance with this opinion. *See Washington Ethical Society, supra* at 19.

*So ordered.*

---

7. In the Statement of Northeast Community Organization for the Preservation of our Residential Properties (Record at 117), the neighbors ask the BZA to order the Union to construct appropriate fences and gates. This request appears inconsistent with a position urging denial of the Union's application and, therefore, an end to the Union's management of the lot.

NEWMAN, Chief Judge, dissenting:

The three issues presented in this case are: (1) whether the Board of Zoning Adjustment accorded adequate weight to the record of the Advisory Neighborhood Commission; (2) whether the Board's findings were supported by substantial evidence; and (3) whether the Board's refusal to reopen hearings constituted an abuse of discretion. The Board, in my opinion, acted within the scope of its discretion in both the extent of the consideration it gave the ANC's recommendation, and in denying petitioner's motion for reconsideration and reargument or for a rehearing. The Board's findings were supported by substantial evidence of record. For these reasons, the Board's order should have been affirmed. Accordingly, I dissent.

The majority first concludes that the Board's Order is fatally flawed by its failure adequately to address the "issues and concerns" of the ANC. I disagree.

The central issue in this case was whether petitioner had demonstrated that the special exception it proposed to the district zoning plan satisfied the relevant zoning regulations. *See Stewart v. District of Columbia Board of Zoning Adjustment*, D.C. App., 305 A.2d 516, 518 (1973).[1] The subject lot is located in an R–1–B District—an area zoned for quiet residential use, *see* District of Columbia Zoning Regulations § 3101.1 (1979)—and it was incumbent upon petitioner to show that the parking use it sought on the lot was "*not likely to become objectionable* to adjoining or nearby property because of noise, traffic or other objectionable conditions...." *Id.* § 3101.4104 (emphasis added). The Board, to determine whether the proposed exception satisfied the applicable zoning regulation, thus was

---

1. The majority's analysis goes astray in defining the central issue. The central issue of the case, according to the majority, was "controlling the use of lot 2." *Supra* at 180. However worthy an objective that might be, it is a misstatement of the Board's task in this case, wherein the Board was required merely to judge petitioner's fitness for the special exception it proposed. *See infra* at 181–182.

required to predict the likely future impact of continuation of petitioner's use of the lot for parking on the quiet residential character of the neighborhood. Only the likely impact of petitioner's proposed exception, however, was at issue.

As interpreted by this court, § 1–171i(d) of the D.C.Code 1978 Supp., authorizes ANCs to advise the Board only on "legally relevant issues and concerns," *i. e.*, those specifically relevant to the applicable zoning regulations. *Wheeler v. District of Columbia Board of Zoning Adjustment*, D.C. App., 395 A.2d 85, 91 n.10 (1978). The Board is required expressly to address the ANC's written recommendations on such "legally relevant" issues. *Friendship Neighborhood Coalition v. District of Columbia Board of Zoning Adjustment*, D.C. App., 403 A.2d 291, 295 (1979). In *Spevak v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 407 A.2d 549, 555 (1979), we held that the Board had satisfied this requirement

> by specifically discussing each concern, by citing evidence and other findings in a reasonable manner, and by explaining why it rejected the ANC's recommendation. Petitioners' complaint, in essence, is that the Board did not follow the ANC's advice. The statute makes no such mandate. What it does require is that great weight be given to, and a reasoned and specific discussion be addressed to, the issues raised.

*See also Kopff v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372, 1384 (1977) (ANCs are advisory only). Although the Board, pursuant to D.C.Code 1978 Supp., § 1–171i(d), is required to give "great weight" to issues and concerns raised in the recommendations of the ANC, " 'great weight' ... does not build in ... [a] presumption of deference to be accorded ANCs [, but rather] that an agency must elaborate, with precision, its

response to the ANC issues and concerns." *Kopff v. District of Columbia Board of Zoning Adjustment, supra* at 1384.

The single member ANC in this case found that petitioner had allowed a public nuisance to exist on the subject lot. His primary concern was that this nuisance be eradicated from the neighborhood. To this end, he recommended that the parking lot use be continued on the lot, but that petitioner take specific measures that, he predicted, would mitigate the nuisance.

The Board shared the ANC's concern with the objectionable use of the subject lot. In Finding No. 17, the Board specifically explained its reasons for rejecting the ANC's recommendation. Petitioner, the Board found, had had both prior notice of the nighttime nuisance on the lot and time to correct the condition. Its failure to do so, the Board concluded, reflected "a lack of responsibility" such that, "[t]his Board cannot predict that [the petitioner] would be more responsive in the future regardless of the remedial measures it now proposes."

The ANC's primary concern, however— finding a means for relieving the neighborhood of the nuisance—was not a "legally relevant" issue in this case, and the Board was not required specifically to address the ANC's alternative recommendations to petitioner's proposal.

Moreover, there was substantial evidence upon which the Board reasonably based its finding that petitioner's continuation of the parking use likely would have a deleterious affect on the residential character of the neighborhood. At hearings, testimonial and physical evidence was presented as to the manner in which petitioner had in the past maintained the lot. Mr. Feggans, the Advisory Neighborhood Council member, testified that petitioner had permitted neighborhood children to use the lot at night as a play area.[2] Neighbors testified that at

---

2. This evidence refutes the majority's assertion, *supra* at 10, that, "The record does not support the conclusion that ... the Union ... consciously [ ] ignored the complaints of the neighbors."

The majority also states, "In this case, lay observations of past conduct of the Union are not sufficient supporting evidence." *Id.* at 181 (citing *Washington Ethical Society v. District of Columbia Board of Zoning Adjustment*, D.C.App., 421 A.2d 14, 17 (1980). Although, as

night men and children gathered on the lot, where they littered, gambled, smoked marijuana, made loud, profane, and occasionally threatening noises, and generally disturbed the tranquility of the neighborhood. One neighbor, the owner of an adjacent plot, stated her belief that incidents of vandalism and burglary were directly related to these unsavory nocturnal congregations.

This evidence, summarized in detailed findings of fact, constituted a valid basis for the Board to conclude:

> The general grounds of the opposition were that the applicant had turned the subject parking lot into a playground and hangout where children and adults gathered[,] resulting in litter accumulations, noise from shouting and offensive language, noise from the use of bikes and motor scooters, alleged use of dope and alleged planning to break into neighboring homes. . . . There were no objections raised to the use of the lot by the applicant or its employees. [Finding 11.]
>
> [T]he present management has had sufficient time to address itself to the concerns of the immediate neighbors and has failed to do so. The applicant was well aware that it had allowed the children to use the lot. In fact it encouraged [such usage.] The applicant was well aware of the destruction to its own property in terms of damaged fences and litter. In permitted its property to remain unrepaired and littered. Such actions reflect a lack of responsibility on the part of the applicant. . . . The Board finds that the applicant permitted the concerns of the neighbors to grow and deepen while the

applicant did little to ameliorate their concerns. This Board cannot predict that the applicant would be more responsive in the future regardless of the remedial measures it now proposes. [Finding 17.]

A third issue, not explicitly addressed by the majority, was also presented. Hearings were held in this case in August, 1979. Following the Board's issuance on March 17, 1980 of its initial Order denying continuation of the special exception, petitioner on March 28, 1980 filed a motion "for Reconsideration, rehearing, or in the Alternative, Reargument." Petitioner asserts on appeal that, because in its motion for reconsideration it brought new evidence to the attention of the Board—to wit, its compliance with the proposals of the ANC, a new grounds maintenance contract, and a police phone log for the time subsequent to the Board hearings—denial of its motion for reconsideration was an abuse of discretion.[3]

22 D.C.R.R. § 5.43 provides: "No request for rehearing shall be considered by the Board unless new evidence is submitted which could not reasonably have been presented at the original hearing." Although the Board was thus empowered to reopen the hearing upon petitioner's motion, there was no requirement that it do so. The Supreme Court has stated:

> Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated. . . . If upon the coming down of the order litigants might demand rehearings

---

in *Washington Ethical Society*, the Board's predictions of future impact were based on lay observations of current conditions, unlike *Washington Ethical Society*, here the testimony of lay witnesses was unimpeached, and was not contradicted by expert testimony. In my opinion, under these circumstances, testimony as to past and current conditions, including the testimony of the Advisory Neighborhood Council member, provided ample evidence upon which the Board reasonably based its findings as to past conduct and its predictions of likely future conduct.

**3.** The majority, without addressing the issue of whether the Board was obligated to reopen the

case upon petitioner's motion, states, that, "[b]y relying on the remote rather than on the recent in making a prediction about future behavior, the Board fails to follow a rational progression from its findings to its conclusions." *Supra* at 181. It also makes reference to evidence which was not clearly before the Board when it entered its Order. *Id.* at 180. The majority, to the extent that it reviews facts never argued to the Board, clearly exceeds the authority of this court to "determine all appeals *upon the exclusive record for decision before . . . the agency.*" D.C.Code 1978 Supp., § 1–1510. (Emphasis added.)

as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever by consummated in an order that would not be subject to reopening. It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body." [*United States v. Interstate Commerce Commission,* 396 U.S. 491, 521, 90 S.Ct. 708, 722, 24 L.Ed.2d 700 (1970) (quoting *Interstate Commerce Commission v. Jersey City,* 322 U.S. 503, 514–15, 64 S.Ct. 1129, 1134–35, 88 L.Ed. 1420 (1944)).] *Accord, e.g., United States v. Pierce Auto Freight Lines,* 327 U.S. 515, 535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946); *Northeast Broadcasting, Inc. v. Federal Communications Commission,* 130 U.S.App.D.C. 278, 287, 400 F.2d 749, 758 (1968). *See also Vestry of Grace Parish v. District of Columbia Alcoholic Beverage Control Board,* D.C. App., 366 A.2d 1110, 1114 (1977).

A final note. Petitioner, from the time it first received a special exception in 1970, has been on notice that its use of the subject lot was conditioned upon its maintenance of the lot in a manner not deleterious to the quiet residential character of the neighborhood. Petitioner was clearly aware prior to the 1979 hearing that children and adults used the lot at night in a manner distressful to the neighbors. In applying for the renewal of the special exception, petitioner sought to propose the minimum corrective it believed the Board would find acceptable. When its prediction proved erroneous, it sought to "up the ante" or, in the alternative, request an advisory opinion of the Board as to what would be acceptable. When the Board declined to engage in this game, petitioners came here seeking relief. Petitioner could easily have rectified this condition by, for example, the erection of a strong, high, locked fence around the lot. Instead of such a relatively inexpensive and highly efficacious solution to the problem, though, petitioner has dragged this case through substantial administrative and judicial litigation. Even an expensive physical barrier would undoubtedly have been substantially less costly to petitioner than this protracted litigation.[4] The social costs too would have been substantially less.[5] The choice of petitioner to litigate rather than ameliorate, in my opinion "represents superfluity at its zenith, utility at its nadir, and expenditure of time and money at its climatic futility." *Matkevich v. Robertson,* 403 Pa. 200, 205, 169 A.2d 91, 94 (1961) (Musmanno, J., dissenting).

4. On the high cost of lawyers, *see generally,* Green, *The Gross Legal Product: "How Much Justice Can You Afford?",* in Verdicts on Lawyers 63 (R. Nader and M. Green ed. 1976).

5. Between 1972 and 1980 this court has experienced a steady increase in the number of appeals and petitions for review, from 796 in 1972 to 1,369 in 1980. 1980 District of Columbia Courts Ann.Rep. 34. This increase has had a clear negative impact upon the rate with which we have been able to dispose of cases. *Id.* at 35; D.C. Court of Appeals and the A.B.A. Standards of Judicial Administration 9 (1977) (Report to the District of Columbia Judicial Planning Committee).